15L 725
4pi 279

G. T. TAYLOR and WIFE *v.* P. P. ROUNTREE *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Non-resident. Personal decree.* Upon a bill to foreclose a mortgage, a personal decree for any balance not satisfied by sale of the mortgaged property, may be rendered against a non-resident defendant brought before the court by publication under the provisions of our statutes.

2. HUSBAND AND WIFE. *Liability of husband for debts of wife.* Prior to the act of 1877, the liability of the husband for the debts of the wife attached and was fixed at once upon marriage, and where the marriage was consummated before said act, its passage did not relieve the husband of the debts of the wife due at date of marriage.

3. STATUTES. *Rule of construction.* Statutes are to be taken as prospective in their operations, unless a contrary intention is clearly expressed upon their face.

---

FROM SUMNER.

---

Appeal from the Chancery Court at Gallatin. GEO. E. SEAY, Ch.

BLACKMORE, WILSON and HEAD for complainants.

JNO. J. VERTREES for defendants.

COOKE, J., delivered the opinion of the court.

On January 11, 1875, W. J. Sweeny, E. A. Sweeny, Ermine Sweeny, W. B. Mitchell and F. V. Mitchell executed their promissory note to respondent, Rountree, for $6,415.20. This, while the joint note of all the makers upon its face, was given for money borrowed by W. J. Sweeny, the others being, in fact, his sureties. And to secure this note said W. J., E. A. and Ermine

Sweeny executed a mortgage upon their respective interests in a tract of land lying in Sumner county, Tennessee, they all being citizens of that county at the time, and the note having been there executed. Rountree was a citizen of Kentucky, subsequent to the execution of this note and mortgage, and in 1876 Ermine Sweeny intermarried in Sumner county with complainant, G. T. Taylor, who was a citizen of Kentucky, and removed with him to that State, where they have continued to reside ever since. On February 9, 1877, Rountree filed his bill in the chancery court of Sumner county against all the makers of said note, and G. T. Taylor, the husband of Ermine, seeking a recovery against them upon said note, and to foreclose said mortgage by a sale of said lands and the application of the proceeds to the satisfaction of his said demand. Taylor and wife were made parties respondent, and were brought before the court by publication, process being duly served upon the resident respondents. An attachment was also prayed for and issued upon a *fiat* of the chancellor, and levied upon the land, but the affidavit was insufficient to sustain the same as an attachment bill, and the attachtachment cuts no figure and need not be further noticed. On June 10, 1879, judgments *pro confesso* having been previously taken against said Taylor and wife, a decree was rendered against all of said respondents for the amount of said note and interest, said mortgage foreclosed and said lands ordered to be sold for the satisfaction of said decree. Said lands were sold and the proceeds so applied, but which were insufficient for

that purpose, leaving the larger portion of said decree unsatisfied. This decree was unappealed from, but on December 6, 1879, the bill in this case was filed by complainant, Taylor, and wife, as a bill of revivor against Rountree and others, seeking to have said decree, so far as it was a personal decree against them upon said note, set aside and vacated for alleged errors apparent upon the record in that case.

Many errors were assigned as apparent upon the face of said decree and proceedings, but two of which, however, are now seriously insisted upon, and which, in our judgment, are all that need be noticed. In the first place it is insisted that as the respondents, Taylor and wife, were non-residents, and brought in under that bill by publication alone, there being no personal service upon them, the court did not acquire personal jurisdiction as to them, and that the decree as against them upon said note, except to the extent of subjecting the lands conveyed in the mortgage, was erroneous upon its face, the court having no jurisdiction to render a personal judgment against them. And this was so held by the Supreme Court of the United States in the case of *Pennoyes* v. *Neff*, 95 U. S., 714. However, under our statute, old Code, sec. 4352, subsec. 1, and 4357, the law has been held different in this State, and such a judgment has been directly held to be valid and proper: *Kyle* v. *Philips*, 6 Baxt., 43. The only difference between that case and the one now under consideration is, that was a proceeding by publication against a non-resident to enforce a vendor's lien, and a personal judgment was rendered for

the excess, after applying the proceeds of the land, and this was to foreclose a mortgage executed to secure the debt. There is no difference in principle, and the case cited is directly in point. The same principle was recognized in *Mulloy* v. *White & Harris*, 3 Tenn. Chan., 9. So that it may be taken as settled in this State, that under our statutory provisions, contained in the sections of the Code above cited, the court in such a case does acquire personal jurisdiction of the parties, and may render a personal judgment for the debt.

On March 19, 1877, which was after the bill was filed, but before the decree sought to be reversed was rendered, the Legislature passed an act, entitled an act to amend the law in regard to the property of married women, by which it was enacted, "that hereafter no husband shall be liable for the debts, contracts or obligations of his wife, incurred by her previous to her marriage; provided, however, that the marital rights of the husband shall not attach to the property of the wife, owned by her at the time of marriage, or which she may become owner of subsequent to her marriage, as heir or distributee, so as to prevent the creditors of the wife from subjecting her property to the satisfaction of their debts": Acts of 1877, p. 104. It is insisted, in the next place, that under and by virtue of this act, although passed subsequent to the execution by the wife of the note sued upon, while a *feme sole*, as well as subsequent to the marriage, and the institution of the suit upon it, against the husband and wife, the liability of the husband for

this anti-nuptial debt was taken away, or prevented from attaching. And the argument in support of this position is that his liability, as the law existed prior to its passage, did not become fixed until judgment against him upon it; and that prior to the recovery of such judgment, the situation or condition of the husband in relation to such anti-nuptial debt of the wife was a sort of legal status, or contingent liability, which the Legislature might change at pleasure, without the impairment of the obligation of any contract, or destruction of any vested rights. In support of this position we have been referred to a decision of the Supreme Court of Kentucky, upon a statute of that State very similar in its provisions to those of the act of 1877, now under consideration, in which it was held that under the provisions of that statute, no recovery could be had against the husband for the debts of the wife contracted *dum sola,* although the marriage had taken place before the passage of that statute: *Fultz and wife* v. *Fox,* 9 B. Monroe, 499. The only difference in principle, so far as we can discover, between that case and the one we are considering, is, in this case, suit had been instituted against the husband and wife upon the note before the passage of our statute, and in the case referred to, the Kentucky statute was passed before the institution of the suit. And this we do not consider very material. We are not satisfied, however, with the reasoning of the opinion in that case, and the only authority cited by the learned judge who delivered it, (Reeves' Dom. Rel., p. 69), does not, we think, sustain the conclusion, and

we have been referred to no other case sustaining that decision, and are not aware of any. The current of authorities is against it. By the common law upon this subject, which was in force in this State until the passage of said statute, one of the immediate consequences of marriage was, that the husband became liable for the anti-nuptial debts of the wife. He became, by the marriage, the absolute owner of her personal property, and became liable absolutely for her debts, which liability continued during coverture, and could only be discharged by the payment of the debts, or the death of the wife, or by his own death, before judgment taken against him: 1 Bl. Com., 443; 2 Kent's Com., 145; Reeves' Dom. Rel., 143: Schoul. Dom. Rel., 56, and numerous authorities cited. Blackstone says: "If the wife is indebted before marriage, the husband is bound afterwards to pay the debt, for he has adopted her and her circumstances together": 1 Com., 443. Kent says: "It is a strict rule of law, which throws upon the husband all the obligations of the wife; and by the same rule of law, he is discharged after the coverture ceases by the death of the wife": 2 Kent's Com., 144. Mr. Schouler says: "One of the immediate effects of marriage at the common law, is that the husband at once becomes bound to pay all outstanding debts of his wife. When married, she is married with her debts, as well as her fortune": Dom. Rel., 55–6. "By marriage the husband becomes liable to pay the debts of the wife, provided these debts be collected during coverture": Reeves' Dom. Rel., 143. But to this (the support of the wife), says

Taylor and Wife *v.* Rountree.

Mr. Bishop, is the duty to discharge the wife's anti-nuptial undertakings of every pecuniary sort, provided he is required to do so during her life: 1 Bish. Law of Married Women, 61.

These authorities are amply sufficient to show that the husband's liability for the debts of the wife attaches, and is fixed at once upon the marriage, and a right of action immediately accrues in favor of her creditors against him, in which she must be joined, for the recovery of the same. This right is absolute and perfect during the continuance of the coverture; is vested and cannot be taken away by statute, even if the Legislature had so intended. "A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Where it springs from contract, or from the principles of the common law, it is not competent for the Legislature to take it away: Cooley Const. Lim., 449, citing a great many authorities, and among others, 4 Met. (Ky.), 385. But if this were not the case, it was not the intention, as we think, of the Legislature that the statute in question should have any retroactive force, or any other than prospective effect. This is indicated by the use of the word "hereafter" at the beginning of the section containing the provision above cited. Besides, the universal rule of construction is that statutes shall be taken to be prospective in their operation, unless a contrary intention is clearly expressed upon their face. And Mr. Bishop, after citing the case of *Fultz and wife* v. *Fox,* above referred to, concludes as follows: "The doc-

trine, in a single word is, that in cases of doubt, the statute is to be construed as acting only prospectively,'', etc. 2 Bish. Law of Married Women, 53.

We conclude, therefore, that respondent, Rountree's right of action, or his suit then pending against Taylor and wife, was not affected by the passage of the statute in question, and there was no error apparent upon the face of the decree, or proceedings sought to be reviewed, which entitled the complainants to any relief.

The chancellor dismissed the bill, and the Referees have reported that his decree should be affirmed, and we are satisfied of the correctness of their conclusions.

The exceptions to the report will be overruled, the report confirmed, and the chancellor's decree affirmed with costs.