CLEVELAND SURGERY
CENTER, L.P. et al.,

v.

BRADLEY COUNTY MEMORIAL
HOSPITAL, et al.

Supreme Court of Tennessee,
at Knoxville.

Aug. 25, 2000.

Dan H. Elrod, G. Brian Jackson, and David L. Johnson, Nashville, TN, for appellant, Bradley County Memorial Hospital.

David J. Cocke, Memphis, TN, for appellant, Ocoee Health Alliance.

William H. West, Nashville, TN and Buddy B. Presley, Jr., Chattanooga, TN, for appellees, Cleveland Surgery Center, L.P. and Ocoee Physical Therapy, Incorporated.

William B. Hubbard and William Penny, Nashville, TN, for amici curiae, Tennessee Hospital Association and Hospital Alliance of Tennessee, Incorporated.

## OPINION

DROWOTA, J., delivered the opinion of the court, in which ANDERSON, C.J., BIRCH, HOLDER and BARKER, JJ., joined.

The plaintiffs/appellees, private health care providers, brought a declaratory judgment action alleging that the defendants/appellants were violating Article II, § 29 of the Tennessee Constitution which precludes any "County, City or Town" from either giving or loaning its credit to any private person or private business or becoming a stockholder with others in a private company unless an election is held and the qualified voters of the county, city or town approve by a three-fourths majority of the votes cast the giving or loaning of credit or owning of stock. The trial court found that the defendants were in violation of the constitutional provision and issued an injunction to preclude future activities that would violate the constitutional provision. The Court of Appeals affirmed the trial court's finding that the defendants had violated Article II, § 29, but slightly modified the injunction. We granted permission to appeal to determine whether Article II, § 29 applies to quasi-governmental entities that do not have the power to levy taxes. For the reasons that follow, we conclude that the constitutional provision is to be construed literally to apply only to counties, cities or towns and that it does not apply to quasi-governmental entities that do not have the power to levy taxes. Accordingly, the judgments of the trial court and Court of Appeals are reversed and summary judgment is granted in favor of the defendants.

The plaintiffs/appellees, Cleveland Surgery Center, L.P. ("Cleveland Surgery") and Ocoee Physical Therapy, Incorporated ("OPT") are private independent health care providers operating in Bradley County. The defendant/appellant Bradley County Memorial Hospital ("Bradley Memorial") is a quasi-governmental entity created by the General Assembly in 1947 to provide health care services to residents of Bradley County and the surrounding area. *See* 1947 Tenn. Priv. Acts 846. Pursuant to the private act as originally enacted and as subsequently amended, Bradley Memorial is governed by an autonomous Board of Directors, the members of which are selected by the Bradley County Commission, the City of Cleveland Commission, and the Bradley County Medical Society, a private association of physicians. *Id.* at § 12 (as amended by 1976 Tenn. Priv. Acts 291, § 1; 1989 Tenn. Priv. Acts 46 § 1; 1993 Tenn. Priv. Acts 22 § 1).

This lawsuit began when Cleveland Surgery and OPT filed a complaint for a declaratory judgment asserting that Bradley Memorial was violating Article II, § 29 of the Tennessee Constitution by participating with defendant Bradley Building L.L.C.[1] in the development of a medical office building adjoining the hospital and by participating with defendant/appellant Ocoee Health Alliance ("OHA") in the creation of a physician-hospital organization.[2] The medical office building would have been owned by private developers with Bradley Memorial leasing the building and then subleasing the office space to physicians and others. The physician-hospital organization, OHA, would have been structured as a non-profit mutual benefit corporation with roughly fifty percent (50%) of the membership interest held by Bradley Memorial and fifty percent (50%) held by individual physicians. OHA was designed and created to market the services of Bradley Memorial and its physicians as a network of providers. As previously stated, by their complaint the plaintiffs sought a declaration that Bradley Memorial's participation in these projects violated that portion of Article II, § 29 of the Tennessee Constitution which provides:

> But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourth of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation except upon a like election, and the assent of a like majority.

The plaintiffs and Bradley Memorial filed cross-motions for summary judgment. The trial court granted the plaintiffs' motion for summary judgment and filed a memorandum opinion in which it held that Bradley Memorial is "an agent and arm of Bradley County" and found that by participating in the building project and the physician-hospital organization, Bradley Memorial had "exceeded its authority by lending the credit of the County and joining in business ventures with private industry in violation of Article II, § 29, of the Constitution of the State of Tennessee, and those acts are deemed ultra vires." Thereafter, the trial court entered an order permanently enjoining Bradley Memorial from participating in a wide variety of activities with private entities that might directly or indirectly implicate the credit of Bradley County or constitute an ownership in a private entity.

Bradley Memorial and OHA appealed the trial court's judgment, asserting among other things that the trial court's injunction was overly broad and would prohibit the hospital from engaging in virtually any business transaction with a private entity. In resolving the issue on appeal, the Eastern Section Court of Appeals relied upon a decision of the Western Section Court of Appeals, *Eye Clinic, P.C. v. Jackson–Madison County Gen. Hosp.*, 986 S.W.2d 565 (Tenn.Ct.App.1998) (perm. app. denied (Tenn.1999)). The Eastern Section interpreted the decision in *Eye Clinic* to require an examination of the private acts creating Bradley Memorial to determine (1) whether Bradley Memorial had been vested with the power to levy taxes; (2) whether Bradley Memorial could compel Bradley County to invoke its taxing power to make payments on Bradley Memorial's indebtedness; and (3) whether Bradley

---

1. The trial court dismissed the plaintiffs' claim against Bradley Building L.L.C. and the plaintiffs did not appeal the dismissal of that claim. Accordingly, Bradley Building L.L.C. is not a party to this appeal.

2. A "physician-hospital organization" (PHO) is an organization formed by a hospital and local physicians for the purpose of marketing and delivering health care services to patients covered by managed care organizations. Contrary to statements made in the opinion of the Court of Appeals, OHA was not involved at all in the medical office building project.

Memorial could obligate Bradley County to appropriate funds to commence hospital operations and pay operating deficits. While recognizing that Bradley Memorial is not itself vested with the power to levy taxes, the Court of Appeals nonetheless affirmed the trial court's finding that the challenged business activities of Bradley Memorial were barred by Article II, § 29. In so holding, the Eastern Section Court of Appeals stated:

> [c]onsidering the funding relationship between the county and the hospital as shown by the Bradley County Private Acts, along with the overwhelming evidence that the County has been fully obligated for the hospital's debts, we find that the partnership ventures engaged in by [Bradley Memorial] and [OHA] in this case amount to ultra vires acts under the Bradley County Private Acts and an unconstitutional application of the Private Act Hospital Act of 1996, under Art. II, § 29 of the Constitution of Tennessee.

However, in spite of this finding, the Court of Appeals agreed with Bradley Memorial and OHA that the injunction issued by the trial court was too broad. As a result, the Court of Appeals modified the trial court's injunction "to provide that Bradley County Memorial Hospital is hereby enjoined from entering into any business transactions with private businesses or individuals which obligate County Funds unless authority is granted by vote of the citizens of Bradley County in a referendum, as required by law."

Thereafter, Bradley Memorial and OHA filed applications for permission to appeal arguing that the Court of Appeals had misinterpreted the *Eye Clinic* decision and thereby inappropriately extended the scope of the constitutional provision at issue and created a split of authority between the Eastern and Western Sections of the Court of Appeals. The Tennessee Hospital Association ("THA"), a voluntary membership organization representing approximately ninety percent (90%) of the state's hospitals, and the Hospital Alliance of Tennessee ("HAT"), a professional association of not-for-profit community hospitals, filed a joint amicus curiae brief in support of the applications for permission to appeal. We granted the applications for permission to appeal to determine whether the terms "County, City or Town" which appear in Article II, § 29 of the Tennessee Constitution encompass quasi-governmental entities that do not possess the power to levy taxes.

In this Court, Bradley Memorial, OHA, and amici curiae, THA and HAT, argue that Article II, § 29 should be narrowly construed to apply only to those governmental entities to which the General Assembly may constitutionally delegate taxing authority. Since Bradley Memorial is not an entity to which the General Assembly may constitutionally delegate taxing authority, the appellants and amici curiae argue that Article II, § 29 does not apply to Bradley Memorial. In support of this argument the appellants and amici curiae rely upon the *Eye Clinic* decision which they contend was misinterpreted by the Court of Appeals in this case. In contrast, the appellees, Cleveland Surgery and OPT, argue that the Court of Appeals correctly interpreted and applied the Western Section's decision in *Eye Clinic*. According to the appellees, the second and third sentences of Article II, § 29 apply to quasi-governmental entities, such as Bradley Memorial, that are arms or agents of cities or counties, which have access to, or can cause the use of, the tax funds of cities or counties, even though such quasi-governmental entities do not have and cannot constitutionally be delegated the power to tax.

*Article II, § 29: Interpretation*

When construing a constitutional provision, this Court must "give effect to the intent of the people who adopt[ed] a constitutional provision." *Gaskin v. Collins,* 661 S.W.2d 865, 867 (Tenn.1983) (internal quotations omitted); *see also State v.*

Martin, *940 S.W.2d 567, 570 (Tenn.1997)* ("It has long been held in this state that provisions of the constitution are to be given effect according to the drafters' intention in light of the entire document."). These intentions are reflected in the terms of the constitutional provision, and unless the context requires otherwise, terms in a constitution must be given their " 'ordinary and inherent meaning.' " Gaskin, *661 S.W.2d at 867 (quoting* State v. Phillips, *159 Tenn. 546, 21 S.W.2d 4 (1929)).* To accomplish that end, courts must construe constitutional provisions "reasonably in light of the practices and usages that were well-known when the provision was passed." Martin v. Beer Bd., *908 S.W.2d 941, 947 (Tenn.Ct.App.1995);* State ex rel. Witcher v. Bilbrey, *878 S.W.2d 567, 573 (Tenn.Ct.App.1994) (citing* Ashe v. Leech, *653 S.W.2d 398, 401 (Tenn.1983);* Peay v. Nolan, *157 Tenn. 222, 230, 7 S.W.2d 815, 817 (1928)).* As the Court of Appeals has recognized,

> Articulating constitutional principles, like any other interpretative exercise, may be aided by referring to external sources. A state constitution does not exist in isolation but rather is a unique historical document. While the text must always be the primary guide to the purpose of a constitutional provision, we should approach the text in a principled way that takes into account the history, structure, and underlying values of the document. Accordingly, Tennessee's courts have relied upon historical documents, constitutional convention proceedings, the proposed constitution of the State of Franklin, other similar state and federal constitutional provisions, and decisions from other jurisdictions construing similar provisions.

*Martin,* 908 S.W.2d at 947 (internal footnotes omitted). With these rules of construction in mind, we will proceed to consider the constitutional provision at issue in this case.

Article II, § 29 of the Tennessee Constitution provides in pertinent part as follows:

> The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for County and Corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation. *But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourth of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation except upon a like election, and the assent of a like majority.*

(Emphasis added.) In construing the terms "County, City or Town" as they are used in this constitutional provision, we will first consider the conditions and concerns which prompted adoption of this constitutional provision. During the early part of the nineteenth century, at the beginning of the industrial revolution and increased westward expansion, railroads and canals were viewed as critical modes of transportation. *See* Stewart E. Sterk & Elizabeth S. Goldman, *Controlling Legislative Shortsightedness: The Effectiveness of Constitutional Debt Limitations,* 1991 Wis.L. Rev. 1301, 1306 (1991). Because private industry was unable to raise the capital necessary to complete these projects, many states and cities borrowed heavily to finance these improvement and transportation projects and issued bonds to buy stock in private companies or guaranteed loans to private companies. *Id.* at 1306-08. Unfortunately, many of these public-private ventures failed causing the states and cities to lose the tax money they had invested and leaving the states and cities with a burden of debt. *Id.* at 1308. As a result of these failed

ventures, between the years 1840 and 1855, nineteen states enacted constitutional provisions which limited the ability of state and local governments to incur debt and extend credit to private businesses. *Id.* at 1309. The reasons prompting adoption of such provisions have been described as follows:

> Early in the nineteenth century it seems to have been the general practice of states to encourage the building of railroads by permitting the state or a subdivision thereof to purchase stock in railroad corporations, to issue bonds or lend credit in aid of railroads, or to make outright donations to them. However, due to the large number of insolvencies of railroads, caused by frauds or economic conditions, states and subdivisions thereof found themselves largely indebted, and were themselves occasionally insolvent because of large investments in such enterprises. Therefore a reversal of policy set in. As early as 1851 Ohio adopted a constitution containing a provision prohibiting stock subscriptions or other forms of aid to corporations. In the ensuing twenty-five years most of the other states adopted similar provisions, either prohibiting aid altogether or requiring a vote of the people before a subscription to stock or other sort of aid could be made or extended.

*Eye Clinic,* 986 S.W.2d at 570 (quoting Annotation, *Constitutional or Statutory Provisions Prohibiting Municipalities or Other Subdivisions of the State from Subscribing to, or Acquiring Stock of, Private Corporations,* 152 A.L.R. 495, 495-96 (1944)). Indeed, in considering the scope of a similar provision in its state constitution, the Montana Supreme Court observed:

> A like provision is found in the Constitution of nearly every state in the Union, and the reason for its presence is not difficult to discover. It represents the reaction of public opinion to the orgies of extravagant dissipation of public funds by counties, townships, cities, and towns in aid of construction of railways, canals,

and other like undertakings during the half century preceding 1880, and it was designed primarily to prevent the use of public funds raised by general taxation in aid of enterprises apparently devoted to quasi public purposes, but actually engaged in private business.

*Thaanum v. Bynum Irr. Dist.,* 72 Mont. 221, 232 P. 528, 530 (1925).

Adoption of constitutional provisions restricting the extension of public credit did not become prevalent in the South until after the Civil War. Stewart, *supra,* at 1311. As a result of the Civil War, most infrastructure in the South had been destroyed including railroads, roadways, canals, and bridges. *Id.* at 1310. To rebuild the infrastructure, southern states borrowed money and authorized large bond issues. *Id.* at 1311. In addition, Reconstruction governments in the South were said to have incurred debt and authorized bond issues for personal gain. *Id.* When the period of Reconstruction ended, many southern states adopted constitutional provisions limiting the extension of public credit. *Id.* Tennessee is a clear example of this trend. Prior to 1870, Article II, § 29 consisted of only one sentence, which is currently the first sentence of the section. *See Eye Clinic,* 986 S.W.2d at 570. The second and third sentences of the provision, which are at issue in this appeal, were adopted as part of the Constitution of 1870 at the end of the Reconstruction government in Tennessee and were aimed at ending the abuses that occurred during Reconstruction. As one author explained:

> On the subject of using the State's credit to aid railroads, turnpikes and other 'internal improvements,' the [1870] Constitution made important changes. Here was to be seen a strong reaction against the abuses of the Brownlow Administration which was in power from 1865 to 1869. There was also evidence of a general *laissez-faire* spirit, which was more prevalent at this time than during the framing of the First and Second Constitutions.

. . . .

The effects of the provisions were: (1) The State might not thereafter own banks in whole or in part, nor invest in the capital stock of private banks or other private companies, as had been frequently done before; (2) the political subdivisions were not absolutely forbidden to use their credit in aid of private enterprises, but the three-fourths vote required for this action was a powerful limitation; (3) railroads which previously had been loaned State bonds and were in default on the payments which were supposed to provide the State with funds to pay the interest and retire the principal of such bonds, could no longer expect the State to continue to refund such bonds at maturity, but might instead expect seizure and sale by the State. James E. Thorogood, *A Financial History of Tennessee Since 1870* 19-20 (1940); *see also* Lewis L. Laska, *A Legal and Constitutional History of Tennessee, 1772-1972,* 6 Mem. St. L. Rev. 563, 640-41 (1976) ("Legislative power was limited in several respects, however as a result of the experiences of Reconstruction. The state was forbidden to make loans to or to own stock in any bank or corporation. This provision ended one of the nobler experiments of Tennessee legal-financial development, namely, public financial support of privately sponsored 'internal improvements, particularly banking ventures. . . . Next, no more state bonds could be issued to defaulting railroads. This provision was aimed at Brownlow's fiscal policies which had saddled Tennesseans with a debt that was not compromised until 1883.' ").

■ Having considered the historical background and origin of the constitutional provision and the concerns which prompted its adoption, we agree with the appellants that the terms "County, City or Town" in the second and third sentences of Article II, § 29 should be given their ordinary and inherent meaning and should not be interpreted to apply broadly as the Court of Appeals in this case found and as

the appellees assert in this Court. In our view, the Western Section Court of Appeals correctly interpreted these terms in *Eye Clinic* as follows:

> The language of Section 29 suggests that the drafters intended that the phrase, "county, city or town," be confined to its literal meaning. The first sentence of Section 29 empowers the General Assembly to authorize counties and towns to impose taxes. The second sentence limits the ability of cities, counties, and towns to lend credit. The second sentence begins with the word, "but." The third sentence, prohibiting such cities, counties, and towns from co-owning stock, begins with the word, "nor." *Considering these three sentences together, the limitations in the second and third sentences plainly modify the entities described in the first sentence.*

986 S.W.2d at 571 (emphasis added). We agree with this analysis and hold that the drafters of the constitutional provision intended that the terms "county, city or town" in Article II, § 29 be given their literal meaning and encompass only those entities to which the General Assembly may delegate taxing authority pursuant to the first sentence of the constitutional provision. In our view, the Court of Appeals in this case misinterpreted the decision in *Eye Clinic.* The *Eye Clinic* decision does not require an in-depth analysis of the private acts creating and governing Bradley Memorial. Applying the analysis adopted in the *Eye Clinic* case, which in our view is the correct analysis, the constitutional provision is implicated only if the entity lending its credit or owning stock in a private company is a county, city, or town to which the General Assembly may delegate taxing authority. *See Metropolitan Dev. & Housing Agency v. Leech,* 591 S.W.2d 427, 429 (Tenn.1979) (finding that bonds issued by the housing agency did not violate Article II, § 29); *Fort Sanders Presbyterian Hosp. v. Health & Educ. Facilities Bd.,* 224 Tenn. 240, 250, 453 S.W.2d 771, 775 (1970) (finding that bonds issued

by health and educational facilities board did not violate Article II, § 29); *West v. Industrial Dev. Bd.*, 206 Tenn. 154, 159, 332 S.W.2d 201, 203 (1960 (finding that bonds issued by an industrial development board did not violate the Article II, § 29).

 Applying this analysis to the facts in this case, it is clear that Bradley Memorial is not a county, city, or town subject to the constitutional prohibitions regarding lending of credit and stock ownership contained in the second and third sentences of Article II, § 29. Bradley Memorial simply is not an entity to which the General Assembly may, under the first sentence of Section 29, delegate the authority to levy taxes. In *Lipscomb v. Dean*, 69 (1 Lea) Tenn. 546 (1878), this Court held that the General Assembly may not delegate the power to levy taxes to school districts or civil districts because these entities are not counties, cities, or towns within the meaning of Article II, § 29. In so holding, the *Lipscomb* Court noted that the constitutional convention of 1870 rejected an amendment that would have inserted the words "civil districts" after the word "counties" in Article II, § 29, to give the General Assembly power to authorize civil districts to levy and collect taxes. *See also Gibson County Special Sch. Dist. v. Palmer*, 691 S.W.2d 544 (Tenn.1985)(holding that the General Assembly may not delegate the power to levy taxes to a special school district because the special school district is not a county, city, or town within the meaning of Article II, section 29). Since the General Assembly may not delegate to Bradley Memorial the power to levy taxes, Bradley Memorial is not a county, city, or town within the meaning of the constitutional provision and the lower courts erred in holding that Bradley Memorial had violated Article II, § 29 of the Tennessee Constitution.

### Conclusion

For the reasons herein stated, the trial court and the Court of Appeals erred in granting summary judgment to the plaintiffs. Accordingly, the judgments of the lower courts are vacated and the injunctions thereby lifted. Summary judgment is granted in favor of the defendants, Bradley Memorial and OHA. Costs of this appeal are taxed to the appellees, Cleveland Surgery and OPT, for which execution may issue if necessary.