586 S.E.2d 569

Charles Allen SIMMONS and Sandra Faye Simmons, as Guardians ad Litem for Chavis Allen Simmons, a minor under the age of eighteen years, Appellants,

v.

GREENVILLE HOSPITAL SYSTEM, d/b/a Greenville Memorial Hospital, Respondent.

No. 25708.

Supreme Court of South Carolina.

Heard Feb. 19, 2003.

Decided Aug. 25, 2003.

Rehearing Denied Sept. 24, 2003.

Michael Parham, S. Blakely Smith, and William L. Dodson, Jr., all of Parham, Smith, & Dobson, of Greenville, for Appellants.

G. Dewey Oxner, Jr., Sally McMillan Purnell, and J. Ben Alexander, all of Haynsworth Sinkler Boyd, of Greenville, for Respondent.

Chief Justice TOAL:

Appellants, Charles Allen Simmons and Sandra Faye Simmons ("Appellants"), appeal from the circuit court's grant of summary judgment for Respondent, Greenville Hospital System, in this declaratory judgment action.

## FACTUAL/PROCEDURAL BACKGROUND

This appeal arises from the settlement of a medical malpractice claim that Appellants brought against Respondent on behalf of their minor child, Chavis Allen Simmons. Chavis was born prematurely at Respondent hospital on April 24, 1992. Chavis was admitted to Respondent's Neonatal Intensive Care Unit ("NICU") and placed on a ventilator due to respiratory distress. While in the NICU, Chavis became infected with *Flavobacterium Memingosepticum* ("FM"), a highly virulent organism. Chavis suffered permanent neurological injury as a result of the infection.

On May 8, 1998, Appellants filed suit against Respondent alleging negligence in the care and treatment of Chavis.[1] After filing an answer denying all allegations of negligence, Respondent offered to settle the claim and entered into negotiations with Appellants. The parties agreed to execute a settlement and release in which they stipulated that Chavis's damages totaled $1.5 million, but recognized that a dispute existed regarding the applicability of the liability caps set forth in the South Carolina Tort Claims Act. S.C.Code Ann. § 15–78–120 (Supp.1994).[2] Respondent contended its liability

---

1. Appellants filed suit both as individuals and as guardians for their minor child. The Appellants' individual suits were dismissed because they were filed after the expiration of the applicable statute of limitations, but the suit brought on behalf of Appellants' minor child survived.

2. S.C.Code Ann. § 15–78–120 (Supp.1994) states, in part, as follows:
   (a) For any action or claim for damages brought under the provisions of this chapter, the liability shall not exceed the following limits:
   (1) Except as provided in Section 15–78–120(a)(3), no person shall recover in any action or claim brought hereunder a sum exceeding

was limited to the $250,000 cap imposed by § 15–78–120(a)(1). Accordingly, Respondent paid Appellants $250,000 with the understanding that either party was entitled to file a declaratory judgment to determine the applicability of the caps.

Appellants filed for declaratory judgment. Thereafter, both parties filed motions for summary judgment. The trial court found that the caps within § 15–78–120(a)(1) applied to Appellants' cause of action and limited Respondent's liability to the $250,000 Respondent had already paid Appellants. Appellants raise the following issue on appeal:

> Did the circuit court err in finding that the $250,000 liability cap in S.C.Code Ann. § 15–78–120(a)(1) limits Appellants' recovery to $250,000?

## LAW /ANALYSIS

■ In 1986, the Legislature established statutory caps to limit the State's liability when it enacted the South Carolina Tort Claims Act. S.C.Code Ann. § 15–78–120(a)(1) (Supp. 1987). In 1988, the Legislature adopted the Uniform Contribution Among Joint Tortfeasor's Act ("Uniform Contribution Act") which purported to provide an unlimited right of contribution for joint tortfeasors who have paid more than their pro rata share of common liability. S.C.Code Ann. § 15–38–20(B) (Supp.1993). In a 1994 decision, *Southeastern Freight Lines*

---

two hundred fifty thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.

(2) Except as provided in Section 15–78–120(a)(4), the total sum recovered hereunder arising out of a single occurrence shall not exceed five hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

(3) No person may recover in any action or claim brought hereunder against any governmental entity and caused by the tort of any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, a sum exceeding one million dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.

(4) The total sum recovered hereunder arising out of a single occurrence of liability of any governmental entity for any tort caused by any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, may not exceed one million dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

*v. City of Hartsville,* 313 S.C. 466, 443 S.E.2d 395 (1994), this Court held that the unlimited pro rata liability required by the Uniform Contribution Act was inconsistent with the caps on liability imposed by § 15–78–120(a)(1). Accordingly, the Court held that § 15–78–120(a)(1) had been impliedly repealed in 1988 with the enactment of the Uniform Contribution Act.

The Legislature reacted swiftly to the *Southeastern* decision by passing 1994 Act. No. 497, Part II, § 107(B)(1) ("1994 Act"). The 1994 Act provided,

> The provisions of Section 15–78–120(a)(1) of the 1976 Code are reenacted and made retroactive to April 5, 1988, the effective date of the South Carolina Uniform Contribution Among Joint Tortfeasors Act, except for causes of action that have been ***filed*** in a court of competent jurisdiction before July 1, 1994.

*Id.* (emphasis added).[3]

*Southeastern* did not address whether subsections (a)(3) & (a)(4) of § 15–78–120 were also impliedly repealed by the Uniform Contribution Act.[4] In *Dykema v. Carolina Emergency Physicians,* 348 S.C. 549, 560 S.E.2d 894 (2002), this Court found that subsections (a)(3) & (a)(4) had been impliedly repealed by the enactment of the Uniform Contribution Act. The *Dykema* court found that while the 1994 Act reset the caps within subsection (a)(1) of § 15–78–120, it did not reset the caps within subsections (a)(3) & (a)(4). *Dykema.* Apparently the Legislature had realized their error already: in 1997, the Legislature passed an Act reinstating § 15–78–120, *in toto.*[5] 1997 Act No. 155, Part II, § 55(C) ("1997 Act"). The 1997 Act contained the following statement concerning its applicability:

---

3. The 1994 Act recognized that a window of unlimited liability existed for cases ***filed*** between April 5, 1988, (the effective date of the Uniform Contribution Act) and July 1, 1994.

4. Subsections (a)(3) & (a)(4) of § 15–78–120 limit recovery in suits against licensed physicians and dentists employed by governmental entities.

5. In addition, the 1997 Act amended the original § 15–78–120 by increasing the liability caps. 1997 Act No. 155, Part II, § 55(D).

> Except where otherwise provided, this section takes effect upon approval by the Governor and applies *to claims or actions pending on that date or thereafter filed,* except where final judgment has been entered before that date.

*Id.* (emphasis added).

In *Steinke v. S.C. Dept. of Labor,* the Court examined the Legislature's attempt to reinstate the caps in the 1997 Act with respect "to claims or actions pending," in addition to those "thereafter filed." 336 S.C. 373, 520 S.E.2d 142 (1999). In *Steinke,* the accident that was the subject of the plaintiffs' suit (the death of their son) occurred in 1993, and the plaintiffs filed their complaint on June 29, 1994, two days before the 1994 Act's reinstatement of the caps became effective. As such, the 1994 amendment did not apply to plaintiffs' claim, but the defendant contended that the caps within the 1997 Act did apply, and that they limited plaintiffs' recovery.

This Court disagreed. Based on the Court's prior decision in *Lindsay v. Nat'l Old Line Ins. Co.,* 262 S.C. 621, 207 S.E.2d 75 (1974), the *Steinke* Court found that the Legislature had attempted to reset the caps retroactively, which would effectively "reverse" this Court's *Southeastern* decision. *Steinke,* 336 S.C. at 403, 520 S.E.2d at 157–58. The Court quoted the following language from *Lindsay* for support:

> Subject to constitutional limitations, the legislature has plenary power to amend a statute. However, a judicial [interpretation] of a statute is determinative of its meaning and effect, and any subsequent legislative amendment to the contrary will only be effective from the date of its enactment and cannot be applied retroactively.

*Steinke,* 336 S.C. at 402, 520 S.E.2d at 157 (quoting *Lindsay,* 262 S.C. 621, 628–29, 207 S.E.2d 75, 78 (1974) (citation omitted)).[6] Because the *Steinke* claim was **filed** before either the 1994 or 1997 Act became effective, the Court found that the defendant's liability was not limited by the caps.

---

**6.** In *Lindsay,* the Court held that the Legislature's attempt to declare, by retroactive amendment, that insurance companies were entitled to certain investment credits, after this Court had interpreted the relevant statutes to mean that insurance companies were not entitled to the credits, violated the separation of powers doctrine.

The following quote from the *Steinke* opinion has spawned the question presently before the Court: "The Legislature may, of course, do what it did in 1994, which was to resolve the statutory conflict and reinstate the statutory caps in *future cases.*" *Id.* at 403, 520 S.E.2d at 157–58 (emphasis added). The case before us now calls for a final decision on whether **"future cases"** includes all cases that have not been filed regardless of when they **arose or accrued.** In other words, whether the liability caps within the 1994 and 1997 Acts are applicable to claims which **arose or accrued** prior to each Act's effective date, but which were not **filed** until after the effective date. This precise question was not resolved in *Steinke* or *Dykema* because the claims in both *Steinke* and *Dykema* were **filed** before the effective date of the 1994 and 1997 Acts reinstating the applicable caps by the Legislature. In Appellants' case, the claim **accrued** before the effective date of either Act, but was not **filed** until 1998, after both Acts became effective.

■ Respondent argues that the Court's language in *Steinke* emphasizing the filing date supports a holding that the date of filing is the only significant date for purposes of determining retroactivity. We disagree and believe such a finding would betray logic.[7] As noted, the preceding cases were filed before the effective date of the relevant Act, and so the date of accrual was not significant. At the time Appellants' claim arose—when Chavis was infected shortly after his birth in 1992—there were no statutory caps in place under the rule of *Southeastern.* Therefore, the Legislature's attempt to reach back and change the status of such claims that arose prior to the Legislature's 1994 reinstatement of the liability

---

7. In addition, the Court's holding today is consistent with its prior opinion in *Moore v. Berkeley County*, 290 S.C. 43, 348 S.E.2d 174 (1986). In *Moore,* the Court was asked to interpret the following language it used when it abolished the doctrine of sovereign immunity in *McCall v. Batson*, 285 S.C. 243, 246, 329 S.E.2d 741, 743 (1985): "[s]overeign immunity will not bar recovery in any case currently pending or in those filed on or before July 1, 1986, provided the defendant has liability insurance coverage. Recovery shall not exceed the limits of the liability insurance coverage," and "[s]overeign immunity shall not apply to any case filed after July 1, 1986." The *Moore* Court held that "the Court intended that sovereign immunity shall not bar recovery in any case **pending** or which **arose** prior to July 1, 1986." 290 S.C. at 45, 348 S.E.2d at 176 (emphasis added).

caps in § 15–78–120(a)(1), and of § 15–78–120 *in toto* in 1997, is, by definition, retroactive, and violates the doctrine of separation of powers. *Steinke; Lindsay.* The Legislature had authority to reinstate the caps, but it could only do so prospectively, with respect to those claims that **arose or accrued** after the effective date of the reenactments.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the circuit court's finding that the liability caps within S.C.Code Ann. § 15–78–120(a)(1) apply to Appellants' claim.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.