IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 4, 2009 Session Heard at Memphis

ESTATE OF JOYCE BELL ET AL. v. SHELBY COUNTY HEALTH CARE
CORPORATION D/B/A THE REGIONAL MEDICAL CENTER

Circuit Court for Shelby County
No. CT-006887-03

No. W2008-02213-SC-S09-CV - Filed August 31, 2010

OPINION ON THE PETITION FOR REHEARING

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which JANICE M. HOLDER,
C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

The Shelby County Healthcare Corporation ("The Med") has filed a Tenn. R. App. P. 39
petition for rehearing requesting this Court to reconsider our opinion in *Estate of Bell v.
Shelby County Health Care Corp.*, ___ S.W.3d ___, 2010 WL 2539644 (Tenn. 2010). In that
opinion, we found that the application of the Act of May 21, 2003, ch. 321, 2003 Tenn. Pub.
Acts 650 ("2003 Act") to the claims of the estate of Joyce Bell and her infant son, Jonathan
Bell, violated Article I, Section 20 of the Tennessee Constitution. We have determined that
the arguments advanced by The Med in its petition do not merit a reconsideration of our
earlier opinion.

**I.**

The Med's petition advances two arguments that were not previously raised either
before the trial court or this Court. First, The Med asserts that it has always been a
governmental entity covered by the Governmental Tort Liability Act ("GTLA") and that the
2003 Act "simply made it clear" that The Med was a governmental entity. Second, The Med
insists that the doctrine of sovereign immunity, embodied in Article I, Section 17 of the
Tennessee Constitution, undermines the validity of our decision that the retroactive
application of the 2003 Act to the claims of the estate of Joyce Bell and Jonathan Bell
violates the prohibition against retrospective laws in Article I, Section 20 of the Tennessee
Constitution.

We have carefully reviewed the record and the parties' briefs and have confirmed that The Med did not present either of these arguments to the trial court or to this Court in the initial briefing of this case. Appellate courts customarily decline to consider issues presented for the first time in a petition for rehearing that were not previously presented in the original hearing of the case. *Harrison v. Schrader*, 569 S.W.2d 822, 828 (Tenn. 1978); *Alexander v. Patrick*, 656 S.W.2d 376, 377 (Tenn. Ct. App. 1983); *see also* 2 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 30:11, at 790 (2010). Accordingly, these issues should have been raised far earlier than in a petition for rehearing. Nonetheless, we will address them now because this opinion involves the manner in which the General Assembly may exercise its legislative power under Article II, Section 3 of the Tennessee Constitution.

## II.

The Med's argument that it has always been a governmental entity is not supported by the record and is inconsistent with the position it took in the trial court. In its trial court filings, The Med stated that "[o]n July 1, 2003, The Regional Medical Center at Memphis became protected under the auspices of the Governmental Tort Liability Act" and that "[o]n July 1, 2003, the Shelby County Health Care Corporation d/b/a the Regional Medical Center at Memphis (MED), gained protection under the Governmental Tort Liability Act (GTLA)." Later, in argument to the trial court, counsel for The Med stated that "had they [the Bell plaintiffs] filed it [their complaint] on December 13th, 2002, I don't think that The Med would have come under the GTLA. I think on July 1, 2003, it did come under the GTLA."

The Med made similar arguments to this Court both in its brief and in oral argument. In its brief, The Med stated that "[p]laintiff filed the claim on December 10, 2003, more than five months after The Med was entitled to protection under the GTLA." Later in its brief, The Med "adopt[ed] and incorporate[d] by reference" an opinion issued by the Attorney General and Reporter stating that "[b]ased on these facts, one may conclude that there is a rational basis for extending the term 'governmental entity'. . . to include The Med." At oral argument before this Court, counsel for The Med similarly conceded that the 2003 Act was a substantive change in existing law.[1]

The Med's current argument that it has always been a governmental entity for the purpose of the GTLA is not subject to the doctrine of judicial estoppel.[2] However, a petition for rehearing is not an appropriate vehicle for advancing a contradictory position when earlier

---

[1] Counsel stated, "This was a substantive change in the law . . . but it was a prospective . . . substantive change in the law."

[2] *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315 (Tenn. 2009) (noting that "[i]n the absence of a sworn statement, the doctrine of judicial estoppel does not apply").

arguments have proved to be unsuccessful. Accordingly, we have concluded that this argument does not provide a basis for granting a petition for rehearing.

## III.

The Med next argues that the General Assembly's constitutional prerogative to prescribe the manner and limits of governmental entities' liability for civil damages should not be circumscribed by Article I, Section 20's prohibition against retrospective laws. In essence, The Med urges us to interpret the Constitution of Tennessee to empower the General Assembly to abridge an injured individual's vested right to recover damages from a governmental entity after the injury has occurred. We respectfully decline The Med's invitation to drastically restrict the application of Article I, Section 20 with regard to statutes authorizing suits against governmental entities.

## A.

The Constitution of Tennessee is the product of the sovereign will of Tennessee's citizens. *State ex rel. Gouge v. Burrow*, 119 Tenn. 376, 381, 104 S.W. 526, 527 (1907); *Williams v. Carr*, 218 Tenn. 564, 571-72, 404 S.W.2d 522, 526 (1966); *Cummings v. Beeler*, 189 Tenn. 151, 175-76, 223 S.W.2d 913, 923 (1949); *The Judges' Cases*, 102 Tenn. 509, 520, 53 S.W. 134, 136 (1899). It embodies fundamental values and articulates Tennesseans' common aspirations for constitutional governance and the rule of law. *Martin v. Beer Bd. for Dickson*, 908 S.W.2d 941, 946-47 (Tenn. Ct. App. 1995). No branch of government is above the Constitution. This Court, as the final arbiter of what constitutional provisions mean,[3] must construe each provision in a way that gives the fullest possible effect to the intent of the Tennesseans who adopted it. *Cleveland Surgery Ctr., L.P. v. Bradley Cnty. Mem'l Hosp.*, 30 S.W.3d 278, 281 (Tenn. 2000); *Prescott v. Duncan*, 126 Tenn. 106, 128, 148 S.W. 229, 234 (1912).

The text of a constitutional provision is the primary guide to the provision's purpose. *Cleveland Surgery Ctr., L.P. v. Bradley Cnty. Mem'l Hosp.*, 30 S.W.3d at 282; *Hatcher v. Bell*, 521 S.W.2d 799, 803 (Tenn. 1974). We must interpret constitutional provisions in a principled way that attributes plain and ordinary meaning to their words, *Barrett v. Tenn. Occupational Safety and Health Review Comm'n*, 284 S.W.3d 784, 787 (Tenn. 2009); *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983), and that takes into account the history, structure, and underlying values of the entire document. *Cleveland Surgery Ctr., L.P. v. Bradley County Mem'l Hosp.*, 30 S.W.3d at 282.

_____

[3] *See Metro. Gov't of Nashville and Davidson County v. Tenn. State Bd. of Equalization*, 817 S.W.2d 953, 955 (Tenn. 1991).

All constitutional provisions are entitled to equal respect. Thus, when called upon to construe a particular provision, the Court must consider the entire instrument, *Barrett v. Tenn. Occupational Safety and Health Review Comm'n*, 284 S.W.3d at 787; *State v. Martin*, 940 S.W.2d 567, 570 (Tenn. 1997), and must harmonize its various provisions in order to give effect to them all. *State ex rel. Higgins v. Dunn*, 496 S.W.2d 480, 487 (Tenn. 1973); *Shelby Cnty. v. Hale*, 200 Tenn. 503, 511, 292 S.W.2d 745, 748-49 (1956). No constitutional provision should be construed to impair or destroy another provision. *Vollmer v. City of Memphis*, 792 S.W.2d 446, 448 (Tenn. 1990); *Patterson v. Washington County*, 136 Tenn. 60, 66, 188 S.W. 613, 614 (1916).

**B.**

Both the common-law doctrine of sovereign immunity embodied in Article I, Section 17 and the prohibition against retrospective laws[4] in Article I, Section 20 have a long lineage. Retrospective statutes have been viewed with disfavor throughout this Nation's history. *Eastern Enters. v. Apfel*, 524 U.S. 498, 532-33 (1988).[5] Retrospective statutes present problems of unfairness because they can deprive individuals of legitimate expectations and upset settled transactions. *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992). Courts have traditionally opposed retrospective statutes because they tend to create instability and because the legislature can unfairly benefit favored groups or harm disfavored groups more easily with retrospective statutes than it can with prospective statutes. 2 Robert D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 15.9(a), at 846 (4th ed. 2007).

The same concern about retrospective laws that animated the debates of the framers of the United States Constitution[6] caused the framers of Tennessee's first constitution to

---

[4]For the purpose of Article I, Section 20, a retrospective statute is one which operates forward but looks backward in that it attaches new consequences or legal significance in the future to past acts or facts that existed before the statute came into effect. *See Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.N.H. 1814) (No. 13,156); *Black's Law Dictionary* 1343 (8th ed. 2004); William P. Wade, *A Treatise on the Operation and Construction of Retroactive Laws as Affected by Constitutional Limitations and Judicial Interpretations* § 1, at 2 (1880). Included within this broad definition are statutes that apply to antecedent acts or events even though the application of the statute is limited to legal proceedings filed after the date of the statute's enactment. Ray H. Greenblatt, *Judicial Limitations on Retroactive Civil Litigation*, 51 Nw. U. L. Rev. 540, 544-45 (1957).

[5]*See also The Federalist* No. 44, at 299 (James Madison) (Easton Press 1979); 2 Joseph Story, *Commentaries on the Constitution* § 1398, at 272 (Boston, Little, Brown and Company, 5th ed. 1891) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 397 (1796) (Patterson, J.)); *Dash v. Van Kleeck*, 7 Johns 477, 505-06, 1811 WL 1243, at *46 (N.Y. Sup. Ct. 1811) (Kent, C.J.).

[6]Robert G. Natelson, *Statutory Retroactivity: The Framers' View*, 39 Idaho L. Rev. 489, 527 (2003).

include a specific prohibition against retrospective laws in its Declaration of Rights.[7]  This prohibition was carried forward unchanged in the Constitution of 1834 and in the Constitution of 1870.  Thus, Tennessee is currently one of eight states whose constitutions contain an explicit prohibition against retrospective laws.  2 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 41:3, at 397 & n.9 (7th ed. 2009).

In Article II, Section 3, the Constitution of Tennessee expressly assigns all legislative power to the General Assembly.  This power is limited only by the federal and state constitutions.  *Perry v. Lawrence Cnty. Election Comm'n*, 219 Tenn. 548, 551, 411 S.W.2d 538, 539 (1967); *Williams v. Carr*, 218 Tenn. at 578, 404 S.W.2d at 529.  We have noted in the past that the prohibition against retrospective laws in Article I, Section 20 is a limitation on the General Assembly's exercise of its legislative power, *Dupuis v. Hand*, 814 S.W.2d 340, 343 (Tenn. 1991); *Hanover v. Ruch*, 809 S.W.2d 893, 896 (Tenn. 1991); *Bank of the State v. Cooper*, 10 Tenn. (2 Yer.) 599, 603 (1831) (Green, J.), and that this Court has the power to determine whether the application of a particular statute violates Article I, Section 20. *Wynne's Lessee v. Wynne*, 32 Tenn. (2 Swan) 405, 411 (1852).

We decline to interpret Article I, Section 17 in a way that undermines the traditional interpretation and application of Article I, Section 20.  It is unnecessary to do so because these two provisions are easily harmonized.  The General Assembly undoubtedly has control over the "manner . . . and courts" in which suits against governmental entities may be pursued.  However, the General Assembly may not exercise this power in a way that retroactively divests citizens of vested substantive rights.  Thus, the ends of these two provisions can be served by holding that the General Assembly's exercise of its power under Article I, Section 17 may not run afoul of the prohibition against retrospective laws in Article I, Section 20.[8]  Accordingly, we hold that the General Assembly may exercise its authority under Article I, Section 17 to shape the contours of litigation and claims against governmental entities, but it may not retrospectively divest an individual of his or her vested substantive rights in doing so.

**IV.**

The Med also asserts that we should recede from our earlier opinion because of the potential ramifications that the lawsuits brought on behalf of Ms. Bell's estate and Jonathan Bell might have on its ability to provide vital medical services to residents of West

---

[7]Tenn. Const. of 1796, Art. XI, § 20.

[8]Other courts have reached similar conclusions. *See, e.g.*, *Greyhound Food Mgmt., Inc. v. City of Dayton*, 852 F.2d 866, 869-70 (6th Cir. 1988); *Kaisner v. Kolb*, 543 So. 2d 732, 738-39 (Fla. 1989); *Rupp v. Bryant*, 417 So. 2d 658, 665-66 (Fla. 1982).

Tennessee, as well as residents of Arkansas, Mississippi, and Missouri. In essence, The Med would have us base our interpretation of Article I, Section 20 on the idea that "the good of the many outweighs the good of the few." We decline to engage in this sort of delicate philosophical balancing where the Tennessee Constitution and prior precedent provide a clear resolution of this case.

The appellate record in this case contains no evidence regarding the mission of The Med. Likewise, there is a dearth of evidence regarding the services The Med provides, the demographics of the patients The Med serves or the alternatives for providing health care to these patients, the sources of The Med's funding, The Med's financial condition, or the arrangements that The Med has made for the compensation of patients injured by acts for which The Med is responsible. Without evidence of this sort, this Court, or any other court for that matter, can only speculate about the possible effect that the lawsuits filed on behalf of Ms. Bell's estate and Jonathan Bell might have on The Med's ability to carry out its mission.

The Med suggests that when the Tennessee General Assembly passed the 2003 Act, it decided that the already accrued claims of persons injured by acts attributable to The Med must be limited in order to preserve the financial well-being of The Med. We have reviewed the text of the 2003 Act and its legislative history to determine whether, in fact, the General Assembly made this choice. Neither the 2003 Act itself nor its legislative history reflect that the General Assembly enacted the 2003 Act for the purpose of altering or affecting legal claims against The Med that had already accrued.

Our examination of the text of the 2003 Act, its legislative history, and the language and legislative history of related acts has failed to identify any legislative findings regarding the existence of an existing need to assure The Med's financial stability that was so immediate and compelling that it required placing new limitations on already accrued claims. To the contrary, the legislative record reflects that many legislators understood that extending the GTLA to The Med largely addressed slip-and-fall cases and traffic accidents involving The Med's employees. Many legislators appeared to believe that the 2003 Act's effect on the ability of patients to recover for negligent medical treatment would be relatively minimal because the liability for these acts would be shifted from The Med to health care practitioners who could still be sued and who were excluded from the full protections of the GTLA.[9] Stated simply, neither the record of this case nor the record of the consideration and passage of the 2003 Act provides a basis for concluding that the General Assembly enacted the 2003

_____

[9]Tenn. Code Ann. § 29-20-310(b) – (c) (Supp. 2009). The legislators, in apparent reliance on information supplied by The Med, also appeared to assume that health care practitioners would carry their own malpractice insurance either with The Med's assistance or independently.

Act in order to address a financial emergency by purposely abridging the rights of persons whose claims against The Med had already accrued.

This case involves a claim for damages filed on behalf of a deceased 27-year-old woman and her 7-year-old son who was born with severe and irreparable brain injuries. The complaint alleges that the woman's death and the child's injuries were caused by negligence for which The Med is responsible. While The Med's liability for the woman's death and the child's injuries has not yet been established, the parties and the trial court apparently agree that the cost to provide humane care to Jonathan Bell for the remainder of his life will be considerable. There is no evidence in this record that either Jonathan Bell or any members of his family have the financial resources to provide this care.

It is the business of the courts "to see that the scales of justice be held with an even hand." *Officer v. Young*, 13 Tenn. (5 Yer.) 320, 321 (1833). In its petition for rehearing, The Med asks us to use these scales to balance concrete injuries and, as yet, unrefuted allegations regarding its liability against the speculative impact that a judgment for the injured parties might have on The Med's ability to carry out its mission. Based on the state of this record, engaging in this sort of balancing would be tantamount to placing our thumb on the scales. Adopting The Med's argument would require reversing long-standing precedents of this Court and would substantially undermine the Tennessee Constitution's express protection against the imposition of retrospective laws. Accordingly, we decline to recede from our earlier conclusion, consistent with *Miller v. Sohns*, 225 Tenn. 158, 162-63, 464 S.W.2d 824, 826 (1971),[10] that the 2003 Act cannot be retrospectively applied to undermine the vested substantive right of Ms. Bell's estate and Jonathan Bell to pursue their claim against The Med without the GTLA's cap on damages.

---

[10] After our decision in *Miller v. Sohns*, we devised a multi-factorial framework for determining whether a right was vested for the purpose of Article I, Section 20. We stated that the four most important inquires were: (1) whether the statute advances or retards the public interest, (2) whether applying the statute retroactively gives effect to or defeats the bona fide intentions and reasonable expectations of the affected persons, (3) whether the statute surprises persons who have long relied on a contrary state of the law, and (4) whether the statute appears to be procedural or remedial. *Doe v. Sundquist*, 2 S.W.3d 919, 924 (Tenn. 1999). The Court in *Miller v. Sohns* concluded that the statute at issue could not be applied retroactively because it was substantive, rather than procedural or remedial and because it was contrary to a "well-settled" common-law rule. These findings would support a similar result using the *Doe v. Sundquist* analysis. By the same token, the right at issue in this case – the right to pursue a claim against The Med free from the GTLA's cap on damages – was both substantive and vested under the *Doe v. Sundquist* analysis.

## V.

We have considered all the arguments presented by The Med in support of its petition for rehearing,[11] and we have concluded that they fail to provide a basis for reconsideration of our earlier opinion. Accordingly, we respectfully deny The Med's petition for rehearing and tax the costs of this petition to the Shelby County Health Care Corporation for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[11]We need not tarry long with The Med's argument that it is entitled to a rehearing because our initial opinion cited two decisions from other jurisdictions that were issued after the briefing and argument in this case was completed. Our decision rests on the prior decisions of this Court, not on these two decisions. These cases were cited as support for our observation that other state courts had adopted an approach to retrospective statutes that was similar to ours.