Hannum *v.* McInturf.

HANNUM *v.* McINTURF.

1. CHANCERY PRACTICE. *Proper practice in pleading.* Where a plea is filed in chancery, the proper practice is to have it set down for argument, and if it is sustained, to take issue upon it.

Case cited: Graham's heirs *v.* Nelson, 5 Hum, 606–9.

2. HOMESTEAD. *No exemption against pre-existing debts.* The homestead provided for by art. XI, sec. 11, of the Constitution of this State, and act of second session of 1870, ch. 80, as against pre-existing debts, is obnoxious to the Constitution of the United States, art. I, sec. 10, and therefore void as to such debts.

3. SAME. *Constitutional law. Obligation of contracts not to be impaired.* The Legislature, under the idea of affecting the remedy, and not the right cannot pass any law that impairs in any way the right in full force existing at the time the contract was executed. Therefore, such property as was subject to execution at the time the contract was executed must remain so until the debt is paid.

Case cited: Webster *v.* Rose, 6 Heis., 93.

15—VOL. 6.

4. Contracts. *Law in force at time of making, a part of contract.* All the law in force at the time a contract is entered into that affects the contract, forms a part of such contract, and no part of such law can be changed as will affect the right of either party under the contract.

No record found.

Freeman, J., delivered the opinion of the court.

This bill is filed to enforce the collection of a judgment in favor of complainant, by attaching and selling the equitable interest of a tract of land which he is alleged to have bought and paid for in part, and after paying the balance of the purchase money, appropriate the surplus to complainant's debt.

The defendant debtor files a plea, in which he claims that he resided on said land, was the head of a family, etc., and insists on an exemption of the property from sale, under the act of 1870 exempting a homestead, in equitable as well as legal estates, in possession of the head of a family, from sale under legal process.

The question debated by counsel in this case, and sought to be raised in the record, is, whether the exemption of a homestead by the above act, and by art. XI, sec. 11, of the new Constitution, can be sustained as against debts created before the ratification of the Constitution, May 5, 1870.

It is very doubtful whether the pleadings fairly present the question, if strictly scanned, but as the Chancellor seems to have taken the agreement or admission of the parties in court at the hearing as part of the pleadings, and acted on the case in this form,

as appears from the decree made, we may concede the question is before us in that decree. The question is one of general interest, and ought to be settled.

We deem it proper here to remark, that the mode adopted of testing the validity of the plea by demurrer, is one unknown, as far as we can find, in chancery practice; and as we have seen other cases at this term of the court where the pleadings in a chancery case have been even carried to the point of a surrejoinder, we believe, it is well to call attention to the true practice in such cases. It is clearly laid down in the Code, sec. 4393, as follows:

"If the plaintiff conceives any plea or demurrer to be naught, either for the matter or manner of it, he may set it down with the clerk to be argued; or, if he thinks the plea good but not true, he may take issue upon it and proceed to trial. If the plea be found false, the complainant shall have the same advantages as if it had been so found by verdict at common law."

The rule as found in the above section of the Code, will be found to be the recognized and long-established practice of the court by reference to any work on chancery pleading and practice. See Danl. Ch. Pr., vol. 1, p. 713, notes 4 and 5; 5 Hum., 606, 609.

Treating the demurrer and action of the court in the plea as equivalent to setting the plea down for argument, and the decree of the court as having overruled the plea (as a good defense to the bill), we proceed to an examination of the question stated.

Is the exemption of a homestead, by the provision of the Constitution and law of 1870, void so far as it may affect debts contracted before its adoption, or can the section of the Constitution be held to operate as against such debts? The question depends upon whether such exemption impairs the obligation of the contract.

Before examining the authorities on this question, we may lay it down as conceded by all the courts whose decisions we have seen on this question, either expressly or by clear implication, that to deprive the creditor of the right to enforce collection of his debt by prohibiting him from reaching all of the property of his debtor from appropriation to the payment of his debt, by a law passed after the creation of the debt, would certainly be within the inhibition of the Constitution. This being conceded, necessarily carries' with it the proposition, that in some way the right to enforce the collection of the debt by appropriation of the debtor's property to its satisfaction, inheres in and is a part of the obligation of the contract of the debtor, and is a right of the creditor. If this be so, then this part of the obligation is inviolate by the clause of the Constitution of the United States, and cannot be impaired or lessened in its effectiveness; nor can the principle be changed, by calling it part of the remedy, and then recurring to the other principle, well settled, that the Legislature may alter or modify the remedy at its will, so that *some* equally efficient remedy be left the party.

The clause of the Constitution of the United States,

the construction and application of which is before us in this case, though expressed in the most concise terms—"no State shall pass any law impairing the obligation of contracts"—has given rise to as much able and exhaustive discussion and diversity of views as perhaps any other part of that instrument. While there is much diversity of decision in the State courts in the application of the principles settled by the Supreme Court of the United States, as the true construction of these words, we think there can be but little difficulty in arriving at the principle itself, upon an examination of the decisions of that high tribunal. This principle is perhaps as well and fully stated in the case of *McCracken* v. *Hayward,* 2 How. (Curtis's ed.), 221, 222, as in any other case. The case arose under a law of Illinois, which required, in substance, that when property should be levied on by execution, three householders should value the property at its cash value, and endorse the amount on the execution or on a paper attached to it; and when such property should be offered for sale, it should not be struck off unless two-thirds of the amount of such valuation should he bid for it. The court say: "In placing the obligation of the contracts under the protection of the Constitution, its framers looked to the essentials of the contract more than to the forms and modes of proceeding by which it was to be carried into execution, annulling all State legislation which impaired the obligation. It was left to the States to prescribe and shape the remedy to enforce it. The obligation of a contract consists in its binding force

on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract, according to their settled legal meaning, when it becomes consummated. The law defines the duty and the right—compels one party to perform the thing contracted for, and gives the other the right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty or impair the right, it necessarily bears on the obligation of the contract in favor of one party to the injury of the other; hence any law which, in its operation, amounts to a denial or obstruction of the rights accruing by a contract, though professing to act on the remedy, is directly obnoxious to the prohibition of the Constitution." Again, after referring to the laws for enforcing the contract in existence at the time of making the contract, the court say: "These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions." In accordance with this reasoning the court held the law of Illinois void, as impairing the obligation of the contract.

The cases of *Bronson* v. *Kinzie*, 1 How., 633 (Curtis's ed.); *Curran* v. *State of Arkansas*, 15 How., 535;

*Hawthorne* v. *Calef*, 2 Wall., and the great leading case of *Ogden* v. *Saunders*, 12 Wheat., 259, with numerous other cases that need not be cited, are to the like effect, and show what is the established doctrine of the Supreme Court of the United States on this question.   We might cite numerous cases from State courts recognizing the same principles, but we deem it unnecessary, as the Supreme Court of the United States must at last be the arbiter of this question, and all other courts of the Union must conform to its decision.

We have but to apply these principles to the case before us to arrive at a proper conclusion as to the validity of the law before us.   It will be seen that the law of Illinois, at the time of making the contract, authorized the sale of the property of a debtor upon execution, after giving notice, to the highest bidder.   The law declared unconstitutional directed that it should only be sold when it brought two-thirds of its appraised cash value.   This was held to impair the obligation of the contract.   Now if the property could not be exempted from liability to sale at two-thirds value, on what principle can it be held that the property of the debtor, subject to sale at the time of making the contract, can be exempted from sale for satisfaction of the debt entirely and at any price?   We confess we are unable to see how the one law is void, as impairing the obligation of the contract, and the other valid.   If the exposition of the Constitution, as given by the Supreme Court of the United States, be not correct, the State legisla-

tures may, at will, under the idea of legislating on the remedy, render nugatory this provision of the Constitution. Sale of the property of a debtor, either under execution or by some other equivalent means, is the only mode known to our law by which a contract for payment of money is enforcible; so that the legal obligation or legal compulsion resting on a party to comply with his contract, becomes a nullity unless this means of enforcing it is left. Courts can indeed issue their process and bring parties before them, give judgment, and award execution, but these are idle forms while the law forbids that the execution or other process shall take the property of the debtor and appropriate its proceeds to the satisfaction of the judgment thus rendered. We are aware that several of the Northwestern and Western States have, by decision, adopted the view that such exemption laws as the one under discussion in this case, are valid. These cases, as well as remarks of text-writers favoring this view, are all based on a decision of Chief Justice Taney, in the case of *Bronson* v. *Kinzie*, 1 How., 633 (Curtis's ed.), in which he says a State may direct that the necessary implements of agriculture, or the tools of a mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments,—and puts this statement on the ground of public policy and humanity. This was purely a *dictum* on the part of the Chief Justice; but even if it were announced as a decision, it could not be fairly extended to the exemption of a homestead worth a thousand dollars, or,

at any rate, he certainly did not intend it to have such application. However, the principle cannot be sustained on any sound view of the question, for if an exemption may be sustained of implements of agriculture, articles of furniture, or any other property subject to execution at the time of making the contract, we cannot see where the limitation upon this power is to be found. If property of one hundred dollars in value may be exempted, why not one thousand, and then ten thousand dollars worth? It is not the extent to which the obligation is impaired in dollars that is prohibited by the Constitution, but it imperatively forbids that it shall be impaired at all. To impair the value of the duty to be performed by the debtor to his creditor to the extent of one dollar, is as much prohibited as to do so to the extent of thousands. The entire obligation is made sacred and inviolable by the supreme law of the land.

We therefore conclude the sound rule to be, that such property as was subject to execution at the time the debt was contracted must remain subject to execution, or sale by other process, until the debt is paid.

We have not gone into an exhaustive discussion of this question. While it would be a pleasure to do so if time allowed, under the pressure upon us by the business before us, we deem it sufficient to give our conclusions, based upon the reasons stated in the above opinion. We had occasion to discuss the general principles involved at last term in the case of *Webster* v. *Rose*, 6 Heis., 93, to which we refer for a fuller review of this subject.

The result is, that the decree of the Chancellor will be affirmed, and the case remanded for further proceedings. The defendant will pay the costs of this court. The costs of the court below will be adjudged by the Chancellor on final disposition of the case.