IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 4, 2009 Session Heard at Memphis

# ESTATE OF JOYCE BELL ET AL. v. SHELBY COUNTY HEALTH CARE CORPORATION D/B/A THE REGIONAL MEDICAL CENTER

**Appeal by Permission from the Circuit Court for Shelby County**
**No. CT-006887-03      Rita L. Stotts, Judge**

---

**No. W2008-02213-SC-S09-CV - Filed June 24, 2010**

---

This appeal involves the application of the Tennessee Governmental Tort Liability Act to an action for damages filed against a defendant that was not covered by the Act when the injury-producing events occurred. The defendant filed a motion for partial summary judgment in the Circuit Court for Shelby County seeking the benefit of the claims and defenses available to government entities under the Act. The plaintiffs responded by challenging the constitutionality of legislation extending the coverage of the Act to the defendant on the ground that the legislation had been enacted after the plaintiffs had sustained their injuries. The trial court held that the Act applied to the defendant but granted the plaintiffs permission to pursue an interlocutory appeal. We granted the plaintiffs' application for permission to appeal after the Court of Appeals declined to consider the case. We have determined that applying the substantive amendment to the Tennessee Governmental Tort Liability Act enacted after the injury-producing events occurred to the plaintiffs' damage claims violates the prohibition against retrospective laws in Article I, Section 20 of the Constitution of Tennessee.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Berry Cooper and Carroll C. Johnson, III, Memphis, Tennessee, for the appellants, Estate of Joyce Bell, Jonathan C. Bell, and Stephen Bilsky, as Administrator for the Estate and as Guardian Ad Litem for Jonathan C. Bell.

James F. Kyle and Dennis P. Hawkins, Memphis, Tennessee, for the appellee, Shelby County Health Care Corporation d/b/a The Regional Medical Center.

**OPINION**

**I.**[1]

In mid-2002, Joyce Bell was twenty-seven years old and pregnant. On August 19, 2002, she was administered an electrocardiogram at the Regional Medical Center ("the Med") in Memphis, Tennessee. No one at the Med ever informed Ms. Bell of the test results, even though they revealed that she had an irregular heartbeat and an electrical conduction problem indicative of a potentially life-threatening condition. In addition, no one ordered follow-up tests to ascertain the precise nature of Ms. Bell's cardiac problems or of the potential effects these problems could have on her unborn child.

On December 12, 2002, Ms. Bell experienced a full cardiac arrest. She was taken by ambulance to the Med where an emergency caesarian section was performed to deliver her baby. Unfortunately, Ms. Bell died. Jonathan C. Bell, her newborn child, survived but sustained severe and irreparable damage to his brain and other organs.

When these events occurred, the Med was a private charitable institution that was not considered to be a governmental entity.[2] However, on May 21, 2003, approximately five months after Ms. Bell died at the Med, the Tennessee General Assembly amended the Tennessee Governmental Tort Liability Act[3] ("GTLA") to transform the Med into a "governmental entity" for the purpose of the Act – but only from July 1, 2003 to June 30, 2006.[4] The General Assembly expressly provided that this legislation "appl[ied] to all claims filed [against the Med] on and after July 1, 2003 through June 30, 2006" and "to all other

---

[1] The facts set forth in this opinion are drawn from the current record on appeal. Because the parties have yet to have a full hearing with regard to these facts, our inclusion of any particular fact in this opinion should not be construed as a conclusive finding of fact that prevents the parties from presenting additional evidence regarding the fact or as preventing the trial court from making contradictory findings of fact based on the evidence actually presented by the parties.

[2] *See Memphis Publ'g Co. v. Shelby County Health Care Corp.*, 799 S.W.2d 225, 230 (Tenn. Ct. App. 1990) (holding that even though the Med served a "public function," it was not a "governmental entity" for the purpose of the public records statute); *see also Haire v. Shelby County Health Care Corp.*, Shelby Equity, 1985 Tenn. App. LEXIS 2708, at *4-5 (Tenn. Ct. App. Feb. 26, 1985) (No Tenn. R. App. P. 11 application filed) (holding that a former employee of the Med lost his status as a county employee when Shelby County transferred the management and operation of the City of Memphis Hospital (now the Med) to the Shelby County Health Care Corporation).

[3] Tenn. Code Ann. §§ 29-20-101 to -408 (2000 & Supp. 2009).

[4] Act of May 21, 2003, ch. 321, 2003 Tenn. Pub. Acts 650, 650-51. By virtue of Tenn. Code Ann. § 29-26-116(a)(3) (2000), the statute of repose on the Bell plaintiffs' medical malpractice actions ran in December 2005. In 2005, the General Assembly extended the Med's temporary status as a governmental entity until December 31, 2011. Tenn. Code Ann. § 29-20-102(3)(B)(iii).

claims which arise on and after July 1, 2003 through June 30, 2006, even if the claims are filed subsequent to June 30, 2006."[5] The Governor signed the bill on June 11, 2003,[6] and it took effect less than three weeks later on July 1, 2003.[7]

On December 10, 2003, Mary Ann Bell, Ms. Bell's mother and Jonathan Bell's grandmother, filed suit in the Circuit Court for Shelby County on behalf of her deceased daughter and her grandson ("the Bell plaintiffs"). The complaint named as defendants UT Medical Group, Inc., Dr. Robert Gates, Dr. Karl Weber, and the Med and sought damages for Ms. Bell's death and Jonathan Bell's catastrophic injuries. During the course of the litigation, Stephen Bilsky replaced Mary Ann Bell as the administrator of Ms. Bell's estate and as guardian ad litem for Jonathan Bell.

On October 13, 2007, the trial court granted Dr. Weber's motion for summary judgment. On March 18, 2008, it granted summary judgments in favor of Dr. Gates and the UT Medical Group, Inc. As a result of these orders, the Med is the only remaining defendant in the case.

On March 4, 2008, the Bell plaintiffs moved for partial summary judgment against the Med. The trial court granted their motion with regard to certain undisputed issues but declined to reach questions of causation. On April 22, 2008, the trial court found based upon the undisputed facts that "[i]t was the sole responsibility of [the Med] to provide the August 11, 2002, EKG of Joyce Bell to the appropriate physicians of . . . [Ms.] Bell" and also concluded that the Med "failed to provide the August 11, 2002, EKG to [Ms.] Bell's physicians." Additionally, the trial court found that the Life Care Plan submitted by the Bell plaintiffs accurately reflects future health care costs and expenses for Jonathan Bell. The Life Care Plan provides for thirty million dollars in such costs and expenses exclusive of pain and suffering and the loss of enjoyment of life. The trial court, however, declined to grant summary judgment with regard to the Bell plaintiffs' assertion that the Med's failure to provide the EKG to Ms. Bell's physicians caused Ms. Bell to suffer a cardiac arrest on December 12, 2002 and that this cardiac arrest was the cause of Jonathan Bell's severe and permanent brain damage.

On July 3, 2008, the Med moved for a partial summary judgment relying on its new status as a government entity. It requested the trial court to find that "as a matter of law the provisions of the Tennessee Governmental Tort Liability Act . . . apply to [the Med] in this case and that it is entitled to all of the defenses and protections therein." The Bell plaintiffs

---

[5]Act of May 21, 2003, ch. 321, §2(b), 2003 Tenn. Pub. Acts at 651.

[6]Act of May 21, 2003, ch. 321, 2003 Tenn. Pub. Acts at 651.

[7]Act of May 21, 2003, ch. 321, §2(a), 2003 Tenn. Pub. Acts at 651.

countered that the 2003 amendment to the GTLA could not be constitutionally applied to their lawsuit. The Med defended the constitutionality of the 2003 amendment to the GTLA without the assistance of the Attorney General and Reporter who, exercising his discretion pursuant to Tenn. Code Ann. § 8-6-109(b)(10) (Supp. 2009), declined to defend the constitutionality of the measure.

The trial court heard the Med's motion on August 27, 2008. In an order issued on September 12, 2008, the court held that the Med "is and was a governmental entity subject to the Governmental Tort Liability Act as codified by Tennessee Code Annotated § 29-20-102, *et seq.*, at the time of the filing of Plaintiffs' Complaint, December 10, 2003." As a result, the court found that the Bell plaintiffs' suit was subject to the limitations on lawsuits brought against a governmental entity under the GTLA, including the cap on damages.

The Bell plaintiffs quickly sought the trial court's permission to pursue a Tenn. R. App. P. 9 interlocutory appeal from its September 12, 2008 decision. The trial court granted the motion because it had "substantial reservations" regarding its ruling. In its order, the trial court identified the following reasons for its concern: (1) the "[p]laintiffs' right of actions accrued prior to the enactment of the amendment to the Governmental Tort Liability Act;" (2) "[t]his case involves the rights of a minor and the Court is conscious of its special duty to protect the rights of minors;" (3) "[t]he [p]laintiff was not dilatory in filing this case, particularly considering that it involves a claim on behalf of a minor;" (4) "[i]t was less than thirty (30) days between enactment of the amendment and the effective date of the amendment;" (5) "[t]he Court is not aware and has not been advised of how the [p]laintiff or the public at large was ever advised or given notice of the amendment in such a way that there was reasonable opportunity to file claims prior to the effective date of the amendment;" and (6) "[t]he amendment clearly affects the substantive rights of the [p]laintiff, and in particular, the amount of damages that may be recovered by the [p]laintiff." The Court of Appeals entered an order on October 22, 2008 denying the Bell plaintiffs' application for permission to appeal. On November 20, 2008, the Bell plaintiffs filed a Tenn. R. App. P. 11 application in this Court. We granted the Bell plaintiffs' application on February 17, 2009.

**II.**

A summary judgment is warranted in virtually any civil case when the party seeking the summary judgment demonstrates that no genuine issues of material fact exist and that it is entitled to a judgment as a matter of law. *See Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 224 (Tenn. 2007); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 195-96 (Tenn. 2001). Thus, when the parties do not disagree regarding the material facts, issues regarding the constitutionality of the application of a statute to the facts of a particular case may be decided by summary judgment as a question of law. *See Bredesen v. Tenn. Judicial Selection Comm'n*, 214 S.W.3d 419, 424 (Tenn. 2007); *Bailey v. County of Shelby*, 188 S.W.3d 539, 542-43 (Tenn. 2006). Decisions involving questions of law require de novo

review without a presumption of correctness. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008); *State v. Burns*, 205 S.W.3d 412, 414 (Tenn. 2006).

## III.

Throughout this proceeding, the parties have agreed that the purpose and effect of the 2003 amendment to the GTLA was to bring the Med within the GTLA's definition of "governmental entity" and that the amendment applied to the Bell plaintiffs' lawsuit against the Med. Their dispute centers on whether the application of the 2003 amendment to the Bell plaintiffs' lawsuit violates the constitutional prohibition against retrospective laws in Article I, Section 20 of the Constitution of Tennessee.

The Med concedes that the 2003 amendment resulted in "a substantive change to the law." However, it insists that the amendment was merely "a prospective change to the law" and that applying it to the Bell plaintiffs does not violate Article I, Section 20 because the Bell plaintiffs lacked any vested rights in their claim for damages until they actually filed their lawsuit. For their part, the Bell plaintiffs assert that their rights vested when Ms. Bell died and Jonathan Bell sustained his injuries and, therefore, that the application of the GTLA's cap on damages results in an unconstitutional interference with their vested rights. We have concluded that permitting the Med to characterize itself as a governmental entity for the purpose of limiting its exposure to the Bell plaintiffs' damages claims violates Article I, Section 20.

## A.

Article I, Section 20 of the Tennessee Constitution guarantees "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Despite two new renditions of the Tennessee Constitution in 1834[8] and 1870[9] and numerous amendments to these constitutions, this provision has remained unchanged since our constitution was originally ratified in 1796.[10] The lineage of Article I, Section 20 can be traced to Article 23 of the New Hampshire Constitution of 1784.[11] Approximately one hundred and seventy-five

---

[8]Tenn. Const. art. 1, § 20 (1834).

[9]Tenn. Const. art. I, § 20 (1870).

[10]Tenn. Const. art. 11, § 20 (1796).

[11]N.H. Const. art. 23 (1784) provides that "[r]etrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." This provision has been characterized as the "ancestor" of the state constitutional provisions safeguarding against the application of retrospective laws in civil cases. Richard B. Collins, Telluride's *Tale*

(continued...)

years ago, New Hampshire's Superior Court of Judicature, the state's highest appellate court at the time, observed that the "object of the clause is to protect both parties from any interference of the legislature whatever, in any cause, by a retrospective law." *Woart v. Winnick*, 3 N.H. 473, 477 (1826).

Other state courts construing broad constitutional prohibitions against retrospective laws similar to Article I, Section 20 have observed that their own constitutional provision provides greater protections to parties in civil matters than those provided by the United States Constitution.[12] This case does not require us to ascertain the boundaries of the rights protected by Article I, Section 20 because it presents circumstances that have been reviewed by this Court before.

Despite the facial breadth of Article I, Section 20, this Court has long taken the view that "not every retrospective law . . . is objectionable in a Constitutional sense." *Collins v. E. Tenn., Va. & Ga. R.R.*, 56 Tenn. (9 Heisk.) 841, 847 (1874). We have held that the prohibition in Article I, Section 20 "does not mean that absolutely no retrospective law shall be made, but only that no retrospective law which impairs the obligation of contracts, or divests or impairs vested rights, shall be made." *Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 696 (Tenn. 1974) (quoting *Shields v. Clifton Hill Land Co.*, 94 Tenn. 123, 148, 28 S.W. 668, 674 (1894)); *Dark Tobacco Growers' Coop. Ass'n v. Dunn*, 150 Tenn. 614, 632, 266 S.W. 308, 312 (1924).

Accordingly, the Tennessee Constitution does not prohibit the retrospective application of remedial or procedural laws, unless the application of these laws impairs a vested right or contractual obligation. *Stewart v. Sewell*, 215 S.W.3d 815, 826 (Tenn. 2007); *Doe v. Sundquist*, 2 S.W.3d 919, 923-24 (Tenn. 1999); *see also Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976). The constitutional guarantee against retrospective laws does, however, prohibit retrospective substantive legal changes "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Doe v. Sundquist*, 2 S.W.3d at 923 (quoting *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978)); *cf. Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn. 1994) (noting that "[w]hether a statute applies retroactively depends on whether its character is 'substantive' or 'procedural.'").

---

[11](...continued)
*of Eminent Domain, Home Rule, and Retroactivity,* 86 Denv. U. L. Rev. 1433, 1452 (2009).

[12]*See Hayes v. Howell*, 308 S.E.2d 170, 175 (Ga. 1983); *Doe v. Phillips*, 194 S.W.3d 833, 849-50 (Mo. 2006); *Opinion of the Justices*, 609 A.2d 1204, 1207 (N.H. 1992); *see also* Marshall J. Tinkle, *Forward into the Past: State Constitutions and Retroactive Laws*, 65 Temp. L. Rev. 1253, 1263-64 (1992); Matthew D. Turner, Note, *Retrospective Lawmaking in Missouri: Can School Districts Assert Any Constitutional Rights Against the State?*, 63 Mo. L. Rev. 833, 837-42 (1998).

We need not tarry long on the issue of whether the 2003 amendment to the GTLA, which temporarily transformed the Med into a governmental entity, is a substantive change in Tennessee law or simply a procedural or remedial change. The Med concedes that the amendment is a substantive legal change. This concession is appropriate given that for more than three decades Tennessee's appellate courts have consistently ruled that a change to the law that alters the amount of damages constitutes a substantive, as opposed to a procedural or remedial, change. *See, e.g., Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) (quoting *Shell v. State*, 893 S.W.2d 416, 419-20 (Tenn. 1995)); *Anderson v. Memphis Hous. Auth.*, 534 S.W.2d 125, 127-28 (Tenn. Ct. App. 1975). Thus, in the present case, the parties are not vying over whether the statutory change is a substantive versus a procedural or remedial legal change.

**B.**

The issue squarely presented by this case is one of constitutional classification. The Med classifies the 2003 amendment as a constitutionally permitted prospective change in the law because the Bell plaintiffs had not filed their lawsuit before the amendment was enacted and became effective. The Bell plaintiffs classify the 2003 amendment as a retrospective law because it impairs their right to recover damages which vested when the allegedly negligent conduct occurred. Distilled to its essence, the question is whether the Bell plaintiffs' right to seek damages, unlimited by the GTLA's cap, vested when the Med's tortious conduct and the Bell plaintiffs' injuries occurred. We conclude that the Bell plaintiffs' right of action to pursue damages without the GTLA's cap on damages vested prior to the General Assembly's approval of the 2003 amendment. Accordingly, as applied to the Bell plaintiffs' lawsuit, the amendment is an unconstitutional retrospective law.

When applying Article I, Section 20 to tort cases, this Court has long recognized that "[t]he rights of the parties [are] fixed under the law as it existed at the time of the injury complained of, and any law which undertook to change those rights would be retrospective and void." *Chicago, St. Louis & New Orleans R.R. v. Pounds*, 79 Tenn. 127, 131 (1883); *see also Crismon v. Curtiss*, 785 S.W.2d 353, 354 (Tenn. 1990); *Miller v. Sohns*, 225 Tenn. 158, 163, 464 S.W.2d 824, 826 (1971);[13] *cf. Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (citation omitted) (noting that "[a]s a general rule, a cause of action for an injury accrues when the injury occurs, an 'injury' being understood as any wrong or damage done to another's person, rights, reputation, or property").

---

[13]We have observed that "[a] vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Where it springs from contract, or from the principles of the common law, it is not competent for the Legislature to take it away[.]" *Taylor v. Rountree*, 83 Tenn. 725, 731 (1885) (quoting Thomas McIntyre Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 449 (4th ed., Boston, Little, Brown and Co. 1868)).

In *Miller v. Sohns*, we considered this issue in the context of a plaintiff who was injured in October 1967 as a result of the negligence of three drivers in a multi-car traffic accident. In April 1968, approximately five months after the accident, the Uniform Contribution Among Tort-Feasors Act[14] took effect. One of the effects of this Act was to reduce a plaintiff's recovery against a joint-tortfeasor-defendant when the plaintiff agrees for consideration not to sue one or more of the joint tortfeasors. Mr. Sohns eventually settled his claims against two of the three defendants in return for $5,000 and proceeded to trial against the third defendant. After a jury returned a plaintiff's verdict for $5,000, the trial court declined to grant the remaining defendant's motion to reduce the verdict by the amount that Mr. Sohns had been paid by the other two drivers. *Miller v. Sohns*, 225 Tenn. at 160-61, 464 S.W.2d at 825. The trial court reasoned that applying the Uniform Contribution Among Tort-Feasors Act to Mr. Sohns's claim would impair a right that vested at the time of the commission of the tort against him. The Court of Appeals affirmed the trial court.

This Court decided to review the decisions of the lower courts "because of the novelty of the question." *Miller v. Sohns*, 225 Tenn. at 161, 464 S.W.2d at 826. In affirming the decisions below, we found that "the substantive rights of plaintiff Sohns accrued . . . [a]t the time of the occurrence of the accident." *Miller v. Sohns*, 225 Tenn. at 162, 464 S.W.2d at 826. Among the rights that accrued was a right "to make a covenant not to sue, without the amount paid by the alleged joint tort-feasor reducing the amount he might recover in a subsequent suit." *Miller v. Sohns*, 225 Tenn. at 163, 464 S.W.2d at 826. We also held that this right in a tort action vested for purposes of Article I, Section 20 "at the time of the commission of the tort against" the plaintiff and that any subsequent change to reduce the plaintiff's recovery violated Article I, Section 20. *Miller v. Sohns*, 225 Tenn. at 162, 464 S.W.2d at 826.

## C.

Tennessee's courts are not alone in adopting this understanding of the restrictions imposed by state constitutional prohibitions against retrospective laws. A recent decision of the Supreme Court of Missouri is particularly illuminating because the courts in Tennessee and Missouri have adopted the same broad definition of retrospective laws originally advanced by Justice Joseph Story in an 1814 decision.[15] *Compare*, *e.g.*, *F.R. v. St. Charles*

---

[14]This Act is currently codified as amended at Tenn. Code Ann. §§ 29-11-101 to -106 (2000).

[15]In addressing a constitutional protection under the New Hampshire Constitution, which states that "[r]etrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses," N.H. Const. art. 23, Justice Story, sitting as a Circuit Justice, offered an enduring definition of what constitutes a retrospective law. Justice Story wrote:

(continued...)

*County Sheriff's Dep't*, 301 S.W.3d 56, 62 (Mo. 2010) *with*, *e.g.*, *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 427 (Tenn. 1996).

In *Klotz v. St. Anthony's Med. Ctr.*, ___ S.W.3d ___, 2010 WL 1049422 (Mo. 2010), the Supreme Court of Missouri confronted a case with circumstances squarely on point with the case before us. In 2004, James Klotz endured sepsis, amputation, and organ failure when his pacemaker caused an infection. In 2005, the Missouri General Assembly decreased the amount of non-economic damages that could be awarded in medical malpractice suits from $579,000 to $350,000. As with the 2003 amendment to the GTLA, the 2005 Missouri amendment expressly applied to all suits filed after a particular date irrespective of whether the tortious conduct giving rise to the suit occurred prior to or after the specified date. Mr. Klotz filed suit in 2006, after the effective date of the 2005 amendment. When the case was tried in 2008, the trial court reduced the jury's award in accordance with the 2005 reduction in the cap on non-economic damages. The Supreme Court of Missouri held that the application of the lower damage cap to any claims that accrued prior to the effective date of the 2005 legislation was an unconstitutional retrospective law, even with regard to lawsuits that were not filed until after the 2005 amendment took effect. *Klotz v. St. Anthony's Med. Ctr.*, ___ S.W.3d at ___, 2010 WL 1049422, at *3.[16]

In reaching its conclusion, the Supreme Court of Missouri drew upon a prior case which had presented the inverse question – whether a statute eliminating a damage cap could be applied to a suit seeking damages for conduct committed prior to the statutory amendment. In that case, the court had observed that

---

[15](...continued)

What is a retrospective law, within the true intent and meaning of this article? Is it confined to statutes, which are enacted to take effect from a time anterior to their passage? or does it embrace all statutes, which, though operating only from their passage, affect vested rights and past transactions? It would be a construction utterly subversive of all the objects of the provision, to adhere to the former definition. It would enable the legislature to accomplish that indirectly, which it could not do directly. Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective. . . .

*Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C. N.H. 1814) (No. 13,156).

[16]The Maryland Court of Special Appeals and the Ohio Court of Appeals have reached the same conclusion applying constitutional provisions expressly proscribing retrospective laws. *Prince George's County, Maryland v. Longtin*, 988 A.2d 20, 36-38 (Md. Ct. Spec. App. 2010); *Blair v. McDonagh*, 894 N.E.2d 377, 391-92 (Ohio Ct. App. 2008). The South Carolina Supreme Court and the Wisconsin Supreme Court have reached the same result based on more generalized constitutional protections. *Simmons v. Greenville Hosp. Sys.*, 586 S.E.2d 569, 571-72 (S.C. 2003); *Martin by Scoptur v. Richards*, 531 N.W.2d 70, 86-93 (Wis. 1995).

> [i]t is best to keep in mind that the underlying repugnance to the
> retrospective application of laws is that an act or transaction, to
> which certain legal effects were ascribed at the time they
> transpired, should not, without cogent reasons, thereafter be
> subject to a different set of effects which alter the rights and
> liabilities of the parties thereto.

*State ex rel. St. Louis-San Francisco Ry. v. Buder*, 515 S.W.2d 409, 411 (Mo. 1974).  The
court ultimately concluded that the damage cap "operated to protect defendants from verdicts
in excess of a certain maximum" and that "[t]he decision to eliminate this protection cannot
justly be applied to acts which occurred when the protection was afforded."  *State ex rel. St.
Louis-San Francisco Ry. v. Buder*, 515 S.W.2d at 411.

Our own prior decisions, as well as those of the Supreme Court of Missouri, are
consistent with the historic purpose of imposing a constitutional restraint on retrospective
laws in civil cases.  That purpose is "to protect both parties from any interference of the
legislature . . . by a retrospective law."  *Woart v. Winnick*, 3 N.H. at 477.  These decisions
also reflect Justice Story's insight that it would be "utterly subversive of all the objects of"
a constitutional prohibition on retrospective laws to allow the enforcement of provisions
"which, though operating only from their passage, affect vested rights and past transactions."
*Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F.Cas. at 767.

## D.

The Med's reliance on *Mills v. Wong*, 155 S.W.3d 916 (Tenn. 2005) to support a
contrary conclusion is misplaced.  The Med notes that we stated in *Mills v. Wong* that "the
Tennessee General Assembly has the sovereign power prospectively to limit and even to
abrogate common law rights of action in tort as long as the legislation bears a rational
relationship to some legitimate governmental purpose."  *Mills v. Wong*, 155 S.W.3d at 922.
However, we also expressly cautioned that "[t]he disturbance of vested rights through
retroactive legislation implicates a different constitutional question which is not at issue in
this case."  *Mills v. Wong*, 155 S.W.3d at 922 n.5 (citation omitted).  *Mills v. Wong* did not
address the issue of retrospective versus prospective application but instead involved
considerations of whether constitutional due process protections require tolling of a statute
of repose for medical malpractice actions where the plaintiff was mentally incompetent
during the repose period.  *See generally Mills v. Wong*, 155 S.W.3d at 918-25.

The Med argues that *Mills v. Wong* ultimately supports its argument that "if vested
rights can be prospectively extinguished by the General Assembly, as the *Mills* Court held,
legislation which limits vested rights of action must also be upheld."  This argument,
however, ignores the constitutionally significant distinction between prospective and
retrospective applications.  In our application of Article I, Section 20 to tort actions, we have

repeatedly found that the rights of the plaintiff vest or accrue with the commission of the tort and the resulting injury to the plaintiff. *See*, *e.g.*, *Crismon v. Curtiss*, 785 S.W.2d at 354; *Miller v. Sohns*, 225 Tenn. at 163, 464 S.W.2d at 826; *Chicago, St. Louis & New Orleans R.R. v. Pounds*, 79 Tenn. at 131. Previous decisions of this Court also firmly establish that the General Assembly may not take away or impair a vested right through a substantive retrospective change in the law. *See*, *e.g.*, *Doe v. Sundquist*, 2 S.W.3d at 923; *Morris v. Gross*, 572 S.W.2d at 907. Accordingly, we find the Med's argument unavailing.

**IV.**

For the reasons addressed above, the 2003 amendment to the GTLA rendering the Med a government entity for the purposes of suits filed after July 1, 2003 is unconstitutional as applied to the Bell plaintiffs whose claims for damages vested prior to the effective date of the 2003 amendment.[17] Accordingly, we reverse the trial court's September 12, 2008 order and remand the case for further proceedings consistent with this opinion. We also tax costs of this appeal to the Shelby County Health Care Corporation for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[17]To the extent that its reasoning differs from our decision in this case, *Bertrand v. Reg'l Med. Ctr. at Memphis*, No. W2008-00025-COA-R3-CV, 2008 WL 4334921 (Tenn. Ct. App. Sept. 23, 2008) (No Tenn. R. App. P. 11 application filed) should no longer be followed.