IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 18, 2013 Session

## AMERICAN TRAFFIC SOLUTIONS, INC. v. THE CITY OF KNOXVILLE, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 0181657-3      Michael W. Moyers, Chancellor**

**No. E2012-01334-COA-R3-CV-FILED-OCTOBER 18, 2013**

This appeal concerns the application of a statutory amendment to a contract the plaintiff had with the city. The plaintiff claims the amendment to Tennessee Code Annotated section 55-8-198, effective July 1, 2011, violates article I, section 20 of the Tennessee Constitution. In the alternative, the plaintiff argues that the amendment does not apply to existing contracts. The trial court concluded that the retroactive application of the amendment was not a constitutional violation. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Thomas Anthony Swafford, Jack Robinson Dodson, III, and Rocklan W. King, III, Nashville, Tennessee, for the appellant, American Traffic Solutions, Inc.

Pamela S. Lorch, Senior Counsel, Office of the Attorney General, Nashville, Tennessee, for the appellees, Robert E. Cooper, Jr., Attorney General and Reporter.

### OPINION

### I. BACKGROUND

In February 2005, the City of Knoxville ("the City") passed an ordinance section providing for usage of unmanned traffic cameras ("traffic cameras") to enforce traffic violations, including red light and speeding violations. Specifically, the City ordinance permitted the usage of evidence from traffic cameras to justify the issuance of a $50, non-

criminal, civil penalty.

In 2008, the Tennessee Legislature enacted Tennessee Code Annotated section 55-8-198. The statute, inter alia, provided that "[a] traffic citation that is based solely upon evidence obtained from a [traffic] camera that has been installed to enforce or monitor traffic violations shall be considered a nonmoving traffic violation." Tenn. Code Ann. § 55-8-198(a).

In February 2009, the City entered into a contract with LaserCraft, Inc. ("LaserCraft") to install traffic cameras in designated areas in the City. As relevant to this appeal, the parties agreed to share the proceeds generated from right-turn-on-red ("RTOR") citations. The contract provided that "[t]he City shall diligently prosecute citations and LaserCraft shall have the right to receive, and the City shall be obligated to pay, the compensation set forth in Exhibit D attached hereto." Under the contract, "Citation" is defined as "the notice of a Violation," and "Violation" is defined as "any traffic violation contrary to the terms of the City of Knoxville Code of Ordinances, Chapter 17, Article X, Section 17-506(a)(3)(a) or Chapter 17, Article V, Section 17-210." Chapter 17, Article X, Section 17-506(a)(3)(a) reads as follows:

> Vehicular traffic facing the signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection, and shall remain standing until green or "go" is shown alone; provided, however, that a right turn on red signal shall be permitted at all intersections within the city provided that the prospective turning car comes to a full and complete stop before turning and that the turning car yields the right-of-way to pedestrians and cross traffic traveling in accordance with their traffic signal. However, such turn shall not endanger other traffic lawfully using the intersection.

The parties further agreed that any future changes in state law would form a part of the contract. They additionally agreed that they could terminate the contract if future state legislation substantially revised the applicable law. At a later date, American Traffic Solutions, Inc. ("ATS") became LaserCraft's successor-by-merger, and the contract with the City was assigned to ATS.

Effective July 1, 2011, the Legislature amended Tennessee Code Annotated section 55-8-198. A new subsection (i) ("the Amendment") was added:

> (i)      A traffic enforcement camera system may be used to issue a traffic citation for an unlawful right turn on a red signal at an intersection that

is clearly marked by a "No Turn on Red" sign[1] erected by the responsible municipal or county government in the interest of traffic safety in accordance with § 55-8-110(a)(3)(A). Any other traffic citation for failure to make a complete stop at a red signal before making a permitted right turn as provided by § 55-8-110(a)(3)(A) that is based solely upon evidence obtained from an unmanned traffic enforcement camera shall be deemed invalid.

The Amendment therefore prohibits the use of traffic camera evidence when there is no posted "No Turn on Red" sign. The Attorney General thereafter issued an opinion that the Amendment applied to all existing contracts, including the City's contract. Consequently, the City notified ATS that it would no longer prosecute RTOR violations identified by the traffic cameras. According to ATS, its annual compensation pursuant to the contract with the City decreased 30-50 percent as a result. In November 2011, ATS filed a complaint against the City, seeking a declaratory judgment that the Amendment is constitutionally invalid.

Around the time that ATS instituted this litigation, Redflex Traffic Systems, Inc. ("Redflex") filed a complaint seeking a declaration that the Amendment is prospective only and inapplicable to Redflex's existing contract with the Town of Farragut, Tennessee ("the Town"), or is otherwise constitutionally infirm. Redflex noted the RTOR citations constituted 75 percent of all citations submitted pursuant to its contract with the Town. Both ATS and Redflex filed amended complaints to add Tennessee's Attorney General. Two months later the cases were consolidated by agreed order.

In March 2012, ATS and Redflex filed motions for summary judgment. In its motion, ATS specifically argued:

By removing RTOR citations from Knoxville's safety camera program, [the Amendment] directly impairs a specific obligation of the Knoxville Contract. RTOR enforcement is a substantial component of ATS's safety camera contracts, including the Knoxville Contract.

Two months later, the Attorney General filed a motion for summary judgment, arguing that

---

[1]The City's representative, Captain Gordon Catlett, Patrol Support Commander, Knoxville Police Department, opined in a declaration as follows: "[T]he addition of a "No Turn on Red" sign will not be an adequate substitute at the fourteen intersections where traffic cameras are installed. Such signs are incompatible with the engineered traffic plans and will simply increase traffic congestion and vehicle crashes in areas where right turns on red were previously permitted."

the trial court should uphold the constitutionality of the Amendment as applied to the contracts, deny the motions for summary judgment, and enter summary judgment in favor of the City and the Town.

In a memorandum opinion and order dated May 30, 2012, the trial court granted the Attorney General's motion for summary judgment and dismissed the case. The trial court concluded that the retroactive application of the Amendment did not violate the Constitutions of either the United States or Tennessee. The court further determined that the Amendment was a remedial statute and did not alter or impair the contractual obligations and expectations of the parties. ATS thereafter filed a timely notice of appeal.[2]

## II. ISSUE

We restate the following issue raised by ATS on appeal:

Whether the Amendment as applied to the contract between ATS and the City violates the Tennessee Constitution.

## III. STANDARD OF REVIEW

For issues involving questions of law, our standard of review is de novo with no presumption of correctness. *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003). Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below. *State v. Burns*, 205 S.W.3d 412, 414 (Tenn. 2006) (citing *S. Constructors, Inc. v. Loudon Cnty Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

There is a strong presumption in favor of the constitutionality of acts passed by the legislature and the court's charge is to uphold the constitutionality of a statute wherever possible. *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *Id.* "In evaluating the constitutionality of a statute, [we] must indulge every presumption and resolve every doubt in favor of constitutionality." *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 858 (Tenn. 1996). "[C]ourts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties." *State v. Taylor*, 70 S.W.3d 717, 720

---

[2]Redflex did not join in the appeal.

(Tenn. 2002). The party attacking the constitutionality of a statute must bear a heavy burden in establishing a constitutional infirmity of the act in question. *Gallaher v. Elam*, 104 S.W.3d 455 (Tenn. 2003).

## IV. DISCUSSION

Article I, section 20 of the Tennessee Constitution states "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Similarly, article I, section 10 of the United States Constitution provides that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts[.]" The Tennessee Supreme Court has observed that the meaning of the state and federal constitutional provisions is identical. *First Util. Dist. of Carter Cnty v. Clark*, 834 S.W.2d 283, 287 (Tenn. 1992).

### Legislative History

At trial, ATS argued that the legislative history of the Amendment provided proof that the legislature did not intend the Amendment to apply retrospectively to existing contracts. It was noted that several members of the General Assembly commented that the Amendment was not intended to restrict the enforcement of existing contracts between Tennessee municipalities and private companies.[3] ATS asserts that although we may not review the legislative history to determine the statute's meaning, we may review the legislative history to determine if the statute is constitutional.

The trial court found that it was inappropriate and unnecessary for it to review or rely upon the legislative history regarding the Amendment. The court held as follows:

---

[3]ATS's argument is weakened by the most recent amendment to Tennessee Code Annotated section 55-8-198, which explicitly states the legislature's intent that all amendments to the statute apply to existing contracts:

> (m)     A local government shall include in any contract involving unmanned traffic enforcement cameras that the contract must conform to any changes in state law. New and existing contracts, as well as contract renewals occurring after the effective date of this act, shall contain a provision that the contract shall comply with all applicable revisions of state law.

*See* 2012 Tenn. Publ. Acts, ch. 751.

This Court believes it to be entirely beyond the province of the Judicial Branch to add substantive terms to otherwise clear and unambiguous legislation based solely upon selected statements made by members of the Legislature during the debate upon this bill. Accordingly, this Court finds that [the Amendment] does not exempt from its provisions contracts currently in effect relating to the operation of automated traffic control cameras.

It is not the legislature but the judiciary that is vested with the power to determine the constitutionality of statutes. "[T]he legislative power is the authority to make, order, and repeal . . . and the judicial, that to interpret and apply, laws." *Richardson v. Young*, 125 S. W. 664, 668 (Tenn. 1910). As noted in *Mabry v. Baxter*, 58 Tenn. 682 (1872):

We have no right to go outside of the statutes presented for our examination and adjudication, to look into the motives for their enactment. We are to confine ourselves to the provisions of the statute itself, and in our decisions we are to presume that the Legislature not only acted upon considerations of public good, but that they acted within the sphere of their legitimate powers. . . .

*Id.*, 1872 WL 4084, at *4. In regard therefore to the relevant issue before us, we find that the trial court properly refrained from consideration of the legislative history surrounding the Amendment.

### *Doe v. Sundquist* Analysis

Article I, section 20 of the Tennessee Constitution prohibits laws "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Estate of Bell v. Shelby Cnty Health Care Corp.*, 318 S.W.3d 823, 829 (Tenn. 2010) (quoting *Morris v. Gross*, 572 S.W.2d 902 (Tenn. 1978)). A "vested right" is one "which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." *Morris*, 572 S.W.2d at 905 (citation omitted). Among the main tests as to whether the obligation of a contract has been impaired are whether the value of the contract or security has been lessened, *Lake County v. Morris*, 28 S.W.2d 351, 354 (Tenn. 1930), or whether the right in full existing at the time the contract was executed has been diminished. *Hannum v. McInturf*, 65 Tenn. 225 (1873).

The trial court specifically noted what the Amendment does NOT do:

a. It does not ban the use of traffic cameras;

b. It does not prohibit the use of evidence obtained by use of traffic cameras;

c. It does not ban the use of evidence obtained through these cameras in prosecuting citations for illegal RTOR;

d. It does not ban the use of such evidence as the sole supporting evidence for a RTOR citation if the municipality prohibits right turns on red at monitored intersections.

As stated by the trial court, the sole effect of the challenged provision is to require some other evidence besides traffic camera evidence standing alone to support a citation for an illegal RTOR at intersections where RTOR are allowed.

"The threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S. Ct. 697 (1983) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 2722 (1978)). The obligations of a contract are impaired by a law that renders them invalid, or releases or extinguishes them. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 431, 54 S. Ct. 231 (1934).

In the instant matter, the trial court employed the four factor analysis set forth in *Doe v. Sundquist*, 2 S.W.3d 919, 924 (Tenn. 1999). The issue in *Doe* concerned vested rights – not impairment of contracts; however, its analysis is similar to the United States Supreme Court's analysis in impairment-of-contract cases. *See, e.g., Energy Reserves Grp., Inc.,* 459 U.S. 400, 103 S. Ct. 697; *Blaisdell*, 290 U.S. 398, 54 S. Ct. 231. The *Doe* factors are: (1) whether the public interest is advanced or retarded, (2) whether the statutory provision gives effect to or defeats the bona fide intentions or reasonable expectations of affected persons, (3) whether the statute surprises persons who have long relied on a contrary interpretation of the law, and (4) the extent to which the statute is procedural or remedial. *Doe*, 2 S.W.3d at 923-24 (as announced in *Ficarra v. Dept. of Regulatory Agencies*, 849 P.2d 6 (Colo. 1993)). No one factor is dispositive. *Jack Tyler Engineering Co. v. SPX Corp.*, 294 Fed. App'x 176, 178 (6th Cir. 2008).

### Procedural or Remedial

The Tennessee Supreme Court has observed that statutes that are procedural or

remedial in nature may be applied retrospectively. *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976).[4] A statute is procedural "if it defines the mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right." *Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn. 1994). "A statute is remedial if it provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." *Doe*, 2 S.W.3d at 923; *see Caudill v. Foley*, 21 S.W.3d. 203, 208 (Tenn. Ct. App. 1999). ATS argues that the Amendment's language is substantive and affects substantive, vested rights.

The trial court found that the Amendment is remedial in nature. The court held as follows:

> [The Amendment] does not change the underlying law regarding the legality or illegality of right turns on red or the rules regarding such turns. As between the motorist and the State, the rights and obligations of the illegal act itself are unchanged. Instead, the effect of the new section is evidentiary; the Legislature has chosen to specify what level of evidence is necessary for the State or municipality to prove and enforce a citation issued for illegal right turns. In other words, the challenged provision "defines the proceeding by which a legal right is enforced" (the means by which the government may enforce laws governing the making of right turns at red lights), "as distinguished from the law which gives or defines the right" (statutes and ordinances that define whether and when one may make a right turn at a red light.). As such, this Court finds that the challenged provision of [the Amendment] is "remedial" or "procedural" in nature, and thus amenable to retrospective application, if indeed it is being applied retrospectively.

We agree with the analysis of the trial court. The Amendment before us is not a substantive legal change but a remedial, procedural one. Changes in evidentiary rules are remedial and not substantive. *Brewer v. Aetna Life Insurance Co.*, 490 S.W.2d 506 (Tenn. 1973). As the *Brewer* Court recognized:

> "It must be evident that the right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens, and, generally in legal contemplation, they neither enter into and constitute a part of any contract, nor can they be regarded as being of the essence of any right which a party may

---

[4]Laws that are procedural or remedial may be applied retrospectively unless the application of these laws would impair a vested right or a contractual obligation. *Estate of Bell*, 318 S.W.3d at 828.

seek to enforce.  Like other rules affecting the remedy, they must, therefore, at all times be subject to modification and control by the legislature; and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those states in which retrospective laws are forbidden.

* * *

Courts of high authority have held that mere rules of evidence do not form part of contracts entered into while they are in force, and that it is competent for the legislature to, from time to time, change the rules of evidence, and to make such change applicable to existing causes of action."

*Brewer*, 490 S.W.2d at 511 (quoting *Marx v. Hanthorn*, 148 U.S. 172, 181, 13 S. Ct. 508 (1893)).

The substantive law defining a RTOR violation has not been revised by the Amendment.  The change made by the legislature is "the procedure" by which the violation is proven.  The Amendment merely alters the rules of evidence to determine when a person has violated a traffic law.  One does not have a vested right in existing rules of evidence and the change in the rules does not constitute a substantial impairment of the obligations of the contract.  *See id.*

**Police Power**

The State "may pass retroactive, remedial legislation in areas reserved for state governance."  *Doe v. Sundquist*, 943 F. Supp. 886, 893 (M.D. Tenn. 1996).  The state's "exercising its authority over its highways . . . [includes] regulations as to the manner in which vehicles shall be operated. . . ."  *Sproles v. Binfold*, 286 U.S. 374, 388, 52 S. Ct. 581 (1932).  Likewise, contracts which relate to the use of the highways must be deemed to have been made in contemplation of the regulatory authority of the state.  *Sproles*, 286 U.S. at 390-91.  The Tennessee "legislature, through its police power, may prescribe conditions under which the 'privilege' of operating automobiles on public highways may be exercised."  *State v. Booher*, 978 S.W.2d 953, 956 (Tenn. Ct. Crim. App. 1997).  "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them."  *Energy Reserves Grp., Inc.*, 459 U.S. at 411.  The use of traffic cameras for citations is an exercise of the police power.  Tenn. Op. Atty Gen. No. 01-004, 2001 WL 1010807 (August 9, 2001).

In *Blaisdell*, the United States Supreme Court has provided:

-9-

"It is the settled law of this [Supreme Court] that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general welfare of the people, and is paramount to any rights under contracts between individuals."

*Blaisdell*, 290 U.S. at 240 (quoting *Manigault v. Springs*, 199 U.S. 473, 480, 26 S.Ct. 127 (1905)). "All contracts are subject to be interfered with, or otherwise affected by, subsequent statutes and ordinances enacted in the bona fide exercise of police power." *Profill Devel., Inc. v. Dills*, 960 S.W.2d 17, 33 (Tenn. Ct. App. 1997) (quoting *Sherwin Williams Co. v. Morris*, 156 S.W.2d 350, 352 (Tenn. Ct. App. 1941)).

Article I, section 20, of the Tennessee Constitution "does not inhibit retrospective laws made in furtherance of the police power of the state." *Shields v. Clifton Hill Land Co.*, 28 S. W. 668, 674 (Tenn. 1894). Because the Amendment "is a bona fide exercise of police power that specifically addresses the public health, safety and welfare," it does not unlawfully impair ATS's contractual rights. *See Profill*, 960 S.W.2d at 33.

## Public Interest

ATS argues the Amendment advances no rational public interest, asserting that an amendment that encourages disrespect for the law and discourages public safety cannot have a legitimate public purpose. According to ATS, there can be no legitimate public purpose in enforcing violations for driving straight through red lights but prohibiting the use of traffic camera evidence to enforce illegal RTOR.

In this case, the Amendment states that its purpose is "to amend Tennessee Code Annotated, Title 55, Chapter 8, relative to traffic surveillance cameras . . . the public welfare requiring it." Thus, the legislature made the statutory revision pursuant to its police power. "The police power of the state is the reserved power of the State to take such action as may be necessary in the public interest." *Tenn. Valley Auth. v. Lenoir City, Tenn.*, 72 F. Supp. 457, 461(E. D. Tenn.1947). Thus, the Amendment is a legitimate exercise of the State's police power, benefitting the public at large.

"When the subject lies within the police power of the state, debatable questions as to

reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its actions within its range of discretion cannot be set aside because compliance is burdensome." *Sproles*, 286 U.S. at 388-89. "[T]he determination of public policy is primarily a function of the legislature." *Taylor v. Beard*, 104 S.W.3d 507, 511 (Tenn. 2003). Neither the parties nor the court may critique the legislature's public-policy decisions.

We find that the trial court properly deferred to the General Assembly's judgment as to the reasonableness and necessity for the Amendment:

> By [the Amendment], the Legislature sought to refine and further regulate the use of [traffic cameras], and chose to do so just three (3) year after its initial enactment. It is important to note that [the Amendment] does not simply seek to modify the evidence required to support a citation for illegal right turns; it provides a fairly comprehensive set of regulations regarding the placement, engineering and use of automated traffic enforcement cameras, along with specific guidelines governing the manner in which citations may be prosecuted using evidence obtained from these devices. Given the broad regulatory nature of [the Amendment], this Court cannot say that the legislation does not reasonably advance a public purpose.

> Even considering new Section (i) of TCA 55-8-198 apart from the other provisions of the bill does not mandate a finding that its language advances no public purpose. The Legislature is not merely concerned with enhancing and advancing the powers of the State. It may also consider and advance the rights, concerns and interests of the citizenry that it serves. By allowing right turns on red throughout the State in 1976 (Chapter 401, Acts of 1976), left turns on red in 1982 (Chapter 684, Acts of 1982), and designating in 2008 that illegal right turn citations based solely on evidence obtained by automated traffic enforcement cameras be considered "non-moving violations" (TCA 55-8-198(a)), the Legislature may be seen to be evolving in the direction of liberality and leniency as regards turns made at controlled intersections. If the Legislature has determined that it is in the public interest to equate such turns with parking violations (a finding central to the viability of the Plaintiffs' contracts with their respective municipalities), this Court cannot say that it is unreasonable or not in the advancement of the public interest for the Legislature to restrict the number of citations issued for such minor offenses. The Legislature could well have reasoned that the fact that these violations represent such large portion of the citation volume generated by cities that utilize these devices, that overall the price that the public was paying for this

-11-

violation was disproportionate to the seriousness of the offense and acted accordingly. Raising the evidentiary bar for the issuance of such citations might (and may well have) address that disproportionality.

In sum, this Court will follow the holding in *Taylor v. Beard* and defer to the Legislature the question of whether the provisions of [the Amendment] advance the public interest. Even if this Court were disinclined to do so, this Court can conceive of a rational basis for the legislation, and therefore must find that it advances the public interest.

(Footnotes omitted). Accordingly, we conclude that the determination of the trial court that the Amendment relates to a legitimate public interest is supported by a preponderance of the evidence.

## Reasonable Expectations/Surprise

The existence of State regulation on the subject of the operation of motor vehicles would suggest that ATS entered into the contract knowing that a change in the law was foreseeable. Tennessee Code Annotated section 55-8-198 was first enacted in July 2008. The initial contract with the City was executed in February 2009. As the contract was executed after the legislature initiated its regulation of traffic citations based upon evidence obtained from traffic cameras, it would be unreasonable for ATS not to expect the legislature to make changes and adjustments to the statutory provisions in the future. Indeed, the contract at issue expressly contemplates future changes in the law. In view of the fact that ATS contracted for possible future changes in the law, it cannot now contend it has been surprised by revisions to the statute or that it had a reasonable expectation that the law would remain static. Because the contractual provisions "suggest that [ATS] knew its contractual rights were subject to alteration by state . . . regulation. . . [its] reasonable expectations have not been impaired." *Energy Reserves Grp., Inc.*, 459 U.S. at 411. When a change in state law is foreseeable, the change does not impair the parties' reasonable expectations. *Id.*

The trial court properly applied the Doe four-factor analysis and correctly concluded that the Amendment did not impair the contract between ATS and the City.

## V. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The case is

-12-

remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, American Traffic Solutions, Inc.

_____
JOHN W. McCLARTY, JUDGE